Dawn SUKALA and John Sukala, Plaintiffs-Appellants,†

v.

HERITAGE MUTUAL INSURANCE COMPANY and Western National Mutual Insurance Company, Defendants-Respondents.

Court of Appeals

*No. 99–1339. Submitted on briefs August 24, 2000.—Decided November 9, 2000.*

## 2000 WI App 266

(Also reported in 622 N.W.2d 457.)

†Petition to review denied.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *D. J. Weis* of *Habush,*

*Habush, Davis & Rottier, S.C.*, Rhinelander. There was oral argument by *D. J. Weis*.

On behalf of the defendant-respondent, Western National Mutual Insurance Company, the cause was submitted on the brief of *Nadine I. Davy* of *Anderson, Shannon, O'Brien, Rice & Bertz*, Stevens Point. There was oral argument by *Thomas W. Bertz*.

On behalf of the defendant-respondent, Heritage Mutual Insurance Company, the cause was submitted on the brief of *Mark A. Klinner* and *Michael J. Roman* of *Sandfort, Zalewski & Klinner, LLP*, Wausau. There was oral argument by *Michael J. Roman*.

Before Dykman, P.J., Vergeront, J., and William Eich, Reserve Judge.

¶ 1. DYKMAN, P.J. Dawn and John Sukala appeal from a judgment declaring underinsured motorist (UIM) reducing clauses in two auto insurance policies valid and enforceable. Heritage Mutual Insurance Company and Western National Mutual Insurance Company issued the policies. The Sukalas argue that the Heritage reducing clause is invalid because Heritage failed to comply with statutory notice requirements when the clause became enforceable under new legislation. We conclude that the statutory notice requirements do not apply because the change in coverage was not initiated by Heritage, but instead resulted from a change in statutory law. The Sukalas also argue that the UIM reducing clauses in both policies are unconstitutional. We conclude that *Dowhower v. West Bend Mut. Ins. Co.*, 2000 WI 73, ¶ 36, 236 Wis. 2d 113, 613 N.W.2d 557, disposes of the Sukalas' constitutional argument. We further conclude that the

UIM provisions in both policies are unambiguous and therefore enforceable. Accordingly, we affirm.

## I. Background

¶ 2.   On October 2, 1996, John Sukala was seriously injured in a two-vehicle automobile accident, while driving a truck for his employer, Haessly & Haessly. The other vehicle was driven by Bruce Hasenohrl. Haessly was insured by Heritage Mutual Insurance Company, as was Hasenohrl. John was insured by Western National Mutual Insurance Company. Haessly's Heritage policy and the Western policy included UIM coverage. The Heritage policy UIM maximum was $1,000,000, and the Western policy maximum was $250,000 per person or $500,000 per accident. Both policies' UIM terms contained a reducing clause, a provision that limited the maximum UIM coverage. Among other limitations, the reducing clauses provided that UIM coverage would be reduced by any amount (1) paid for bodily injury under another insured's liability insurance, and (2) paid or payable as worker's compensation benefits. Since the time of the accident, Heritage has paid $100,000 to the Sukalas[1] under the liability portion of Hasenohrl's policy, and John has received about $612,000 in worker's compensation benefits.[2]

---

[1] In their brief, the Sukalas state that the $100,000 was paid to Dawn. We do not distinguish between Dawn in her individual capacity and the Sukalas in their joint capacity on this appeal because none of the issues before us are affected by the distinction.

[2] The parties do not provide record cites referring to evidence that these amounts were paid, nor do we find any authoritative support upon our own search of the record. How-

¶ 3.  The action leading to this appeal originated in February 1997, when Dawn sued Western, Heritage, and Hasenohrl[3] for any compensatory damages to which she was entitled. The circuit court granted Heritage's motion that John be compelled to join Dawn's action. The Sukalas then moved the court for a declaration that the UIM reducing clause in Haessly's Heritage policy was invalid because Heritage did not comply with notice requirements set out in WIS. STAT. § 631.36(5) (1997–98).[4] The Sukalas also moved for a

---

ever, because the parties do not appear to dispute the amounts or the fact of payment, we take these facts as true.

[3] Before this appeal, Hasenohrl was dismissed from the suit, as was Heritage in its capacity as Hasenohrl's liability insurer.

[4] All references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted. WISCONSIN STAT. § 631.36(5) reads in part:

> RENEWAL WITH ALTERED TERMS. (a) *General*. Subject to pars. (b) and (d), if the insurer offers or purports to renew the policy but on less favorable terms or at higher premiums, the new terms or premiums take effect on the renewal date if the insurer sent by 1st class mail or delivered to the policyholder notice of the new terms or premiums at least 60 days prior to the renewal date. If the insurer notifies the policyholder within 60 days prior to the renewal date, the new terms or premiums do not take effect until 60 days after the notice is mailed or delivered, in which case the policyholder may elect to cancel the renewal policy at any time during the 60-day period. The notice shall include a statement of the policyholder's right to cancel. If the policyholder elects to cancel the renewal policy during the 60-day period, return premiums or additional premium charges shall be calculated proportionately on the basis of the old premiums. If the insurer does not notify the policyholder of the new premiums or terms as required by this subsection prior to the renewal date, the insurer shall continue the policy for an additional period of time equivalent to the expiring term and at the same premiums and terms of the expiring policy, except as permitted under sub. (2) or (3).

declaratory judgment that WIS. STAT. § 632.32(5)(i),[5] the statutory section that allows for UIM reducing clauses, violated both the federal and state constitutions, and that both the Heritage and Western policies' reducing clauses were therefore invalid. The court denied both motions and incorporated its decision on the motions into a final judgment disposing of the case.[6] The Sukalas appeal.

## II. Analysis

### A. *Wis. Stat. § 631.36(5) Notice Requirements*

■

¶ 4. The Sukalas first argue that the reducing clause in the Heritage policy was invalid because when Heritage notified Haessly of changes in UIM coverage, Heritage failed to comply with notice requirements in WIS. STAT. § 631.36(5). This presents a question involving statutory construction and the application of a statute to a particular set of facts. These are questions of law that we decide de novo. *See Hanson v. Prudential Property & Cas. Ins. Co.*, 224 Wis. 2d 356, 363, 591

---

[5] WISCONSIN STAT. § 632.32(5)(i) reads:

A policy may provide that the limits under the policy for uninsured or underinsured motorist coverage for bodily injury or death resulting from any one accident shall be reduced by any of the following that apply:
1. Amounts paid by or on behalf of any person or organization that may be legally responsible for the bodily injury or death for which the payment is made.
2. Amounts paid or payable under any worker's compensation law.
3. Amounts paid or payable under any disability benefits laws.

[6] Apparently, the parties do not dispute that John is eligible for UIM coverage under Haessly's policy with Heritage.

N.W.2d 619 (Ct. App. 1999), *review denied*, 225 Wis. 2d 490, 594 N.W.2d 384 (1999). We conclude that Heritage was not required to comply with § 631.36(5).

¶ 5.   WISCONSIN STAT. § 631.36(5) requires that when an insurer "offers or purports to renew the policy but on less favorable terms," the insurer must notify the policyholder of the new terms sixty days prior to the renewal date. In addition, the notice must include a statement of the policyholder's right to cancel. *See* WIS. STAT. § 631.36(5)(a). If the insurer fails to follow the notice requirements, then as a general rule it must "continue the policy for an additional period of time equivalent to the expiring term and at the same premiums and terms of the expiring policy. . . ." *Id.* In *Hanson,* 224 Wis. 2d at 368, and *Roehl v. American Family Mut. Ins. Co.,* 222 Wis. 2d 136, 146, 585 N.W.2d 893 (Ct. App. 1998), we held that § 631.36(5) does not apply when the change in a renewed policy is a result of statutory changes, and not a change initiated by the insurance company.

¶ 6.   The Sukalas acknowledge that the applicability of the reducing clause in the Heritage policy was triggered by a statutory change as occurred in *Hanson* and *Roehl*. Nevertheless, they attempt to distinguish their case from *Hanson* and *Roehl,* arguing that in those cases the insurance companies had not actually sent any notice of altered terms, whereas Heritage elected to include information about changes in UIM coverage when it sent a renewal notice to Haessly. The Sukalas argue that once Heritage chose to send *some* notice regarding UIM coverage, it should have complied with the timing and content requirements of WIS. STAT. § 631.36(5). They ask us to adopt a "voluntarily undertaken duty" rule from negligence cases such as

*Wulf v. Rebbun*, 25 Wis. 2d 499, 131 N.W.2d 303 (1964). This rule states that, "[a]lthough one may have no duty to perform an act, if he attempts to do something to another even although gratuitously he must exercise reasonable care." *Wulf*, 25 Wis. 2d at 503.

¶ 7. We decline to adopt such a rule. Neither *Hanson* nor *Roehl* suggests any basis for the distinction the Sukalas make. Moreover, the effect of the distinction is to establish liability for those insurance companies who do more than what is statutorily required of them, while insurance companies who meet only the legal minimum standards remain protected under *Hanson* and *Roehl*. We conclude that WIS. STAT. § 631.36(5) does not apply to changes related to insurance policy reducing clauses that are not initiated by the insurance company but instead come into effect by a statutory change, even where the insurance company gratuitously sends a renewal notice discussing altered UIM terms. Heritage was not required to give notice that complied with § 631.36(5), and the UIM reducing clause was not rendered inoperative because of Heritage's failure to do so.

### B.   *Validity of UIM Reducing Clauses*

¶ 8. When the Sukalas initiated this appeal, the parties disputed whether WIS. STAT. § 632.32(5)(i), the statute permitting UIM reducing clauses like those at issue here, was unconstitutional in violation of substantive due process. The Sukalas' position was that if § 632.32(5)(i) were unconstitutional, then the reducing clauses in the Heritage and Western policies would necessarily be invalidated. After the parties filed their briefs, the supreme court decided *Dowhower v. West Bend Mut. Ins. Co.*, 2000 WI 73, ¶ 36, 236 Wis. 2d 113, 613 N.W.2d 557, holding that § 632.32(5)(i) does not

73

violate substantive due process because it does not deprive policy holders of any constitutionally protected right.[7] We conclude that *Dowhower* disposes of the Sukalas' constitutional argument. The *Dowhower* court addressed the same statute at issue here, *Dowhower*, 2000 WI 73 at ¶ 33, and the language in the Heritage and Western policies is nearly identical to the language in that statute.

¶ 9. In their briefs, the parties did not address whether the UIM provisions were ambiguous. However the issue arose at oral argument. Because the question of whether an insurance policy is ambiguous is a question of law, *see Wisconsin Label Corp. v. Northbrook Property & Cas. Ins. Co.*, 2000 WI 26, ¶ 24, 233 Wis. 2d 314, 607 N.W.2d 276,[8] we may consider it even though the trial court did not and the parties did not brief the issue, *see Bartus v. DHSS*, 176 Wis. 2d 1063, 1071, 501 N.W.2d 419 (1993); *Wirth v. Ehly*, 93 Wis. 2d 433, 443–44, 287 N.W.2d 140 (1980).[9] We choose to do so

---

[7] While the *Dowhower* court was interpreting the 1995–96 statute, *Dowhower v. West Bend Mut. Ins. Co.*, 2000 WI 73, ¶ 1, 236 Wis. 2d 113, 613 N.W.2d 557, the language of WIS. STAT. § 632.32(5)(i) has not changed.

[8] We are not convinced by the argument that *Dowhower* departs from the rule that whether an insurance policy is ambiguous is a question of law subject to de novo review. While the *Dowhower* court remanded to the circuit court to decide whether the insurance policy there was ambiguous, *Dowhower*, 2000 WI 73 at ¶ 35, four justices addressed the question of ambiguity, *id.* at ¶ 35, ¶ 37, ¶ 55.

[9] "It is the often repeated rule in this state that issues not considered by the circuit court will not be considered for the first time on appeal. This rule is not absolute, however, and exceptions are made." *Jackson v. Benson*, 218 Wis. 2d 835, 901, 578 N.W.2d 602 (1998) (citations omitted). Where all the issues

because the parties had the opportunity to address the issue at oral argument.

¶ 10.    The terms of an insurance policy are ambiguous only when they are fairly susceptible to more than one construction. *See Maas v. Ziegler*, 172 Wis. 2d 70, 79, 492 N.W.2d 621 (1992). Policy language may still be unambiguous even when it is complex or cumbersome. *See Heater v. Fireman's Fund Ins. Co.*, 30 Wis. 2d 561, 565, 141 N.W.2d 178 (1966). We will not rewrite an insurance policy to bind an insurer to a risk it did not contemplate unless the terms are ambiguous. *See Maas*, 172 Wis. 2d at 79.

¶ 11.    It is true that if an insured were only to read the declarations section of the Heritage or Western policies, she or he would simply see a dollar figure representing the maximum UIM coverage, an amount that is not fully available under the circumstances of some auto accidents. However, most insurance policies contain limitations and exclusions, and that does not make them ambiguous. A declarations page is intended to provide a summary of coverage and cannot provide a complete picture of coverage under a policy. Therefore the question we must ask is whether the UIM provisions, read together with the declarations page, are fairly susceptible to more than one construction. We conclude that they are not.

¶ 12.    The section of the Heritage policy at issue is Haessly's business auto coverage. The very first paragraph of the "Business Auto Coverage Form" of the policy contains the following language: "Various provi-

raised are legal questions that can be disposed of based upon consideration of the record before the appellate court, we may exercise discretion to decide the entire case in the interests of judicial economy and finality. *See id.*

sions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered." The UIM portion of the business auto coverage is affected by a two-and-one-half page endorsement entitled "Wisconsin Uninsured and Underinsured Motorists Coverage." The next line after the title states, "This endorsement modifies insurance provided under the following: Business Auto Coverage Form." On the first page, in bold and capital letters, the endorsement lists section four as "Limit of Insurance" and continuing on the next page, it lists the following limitations for underinsured motorist coverage:

> The Underinsured Motorists Limit of Insurance will be reduced by any of the following that apply:
>
> (a)    All sums paid by or on behalf of any person or organization that may be legally responsible for the bodily injury for which the payment is made.
>
> (b)    All sums paid or payable under any Workers' Compensation law.
>
> (c)    All sums paid or payable under any disability benefits laws.[10]

¶ 13.    The provisions of the Western policy are similarly unambiguous, though they differ from the Heritage policy in format because the Western policy originally contained uninsured motorist (UM) coverage, but no UIM coverage. An endorsement to the Western policy states in large capital letters at the top, "This endorsement changes the policy. Please read it

___

[10] We note that the UIM reducing clause in the policy essentially mimics the language in WIS. STAT. § 632.32(5)(i), which we assume is an example of what the legislature viewed as an unambiguous means of conveying the allowable limitations.

76

carefully. Underinsured Motorists Coverage." In the two-and-one-half page endorsement, Western lists "Limit of Liability" in bold and capital letters. Under that heading, the policy states limitations nearly identical to those in the Heritage policy.

¶ 14.   Under either policy, it may be somewhat cumbersome for an insured to cross-reference the limiting provisions and the declarations page. However, this does not make the policy language ambiguous, nor are the provisions ambiguous because the calculation of actual benefits under some circumstances could become complex. *See Heater*, 30 Wis. 2d at 565. "[A]n otherwise unambiguous provision is not made ambiguous simply because it is difficult to apply to the facts of a particular case." *Quinlan v. Coombs*, 105 Wis. 2d 330, 335, 314 N.W.2d 125 (Ct. App. 1981). We conclude that the UIM provisions in the terms of the Heritage and Western policies are unambiguous. Therefore, the Sukalas must be held to the terms of the policies.

¶ 15.   Even though we have concluded that both policies' UIM provisions are unambiguous, we address whether they might nevertheless provide "illusory" coverage, as the Sukalas contended at oral argument.[11] In some cases, before the legislature enacted WIS. STAT. § 632.32(5)(i), we held that UIM provisions were invalid when they rendered coverage "illusory." *See, e.g., Hoglund v. Secura Ins.*, 176 Wis. 2d 265, 267, 500 N.W.2d 354 (Ct. App. 1993); *Kuhn v. Allstate Ins. Co.*,

---

[11] Whether an insurance contract is "illusory" is a question of law, *see Hoglund v. Secura Ins.*, 176 Wis. 2d 265, 268, 500 N.W.2d 354 (Ct. App. 1993), and we may address this issue though it was not raised below, *see Bartus v. DHSS*, 176 Wis. 2d 1063, 1071, 501 N.W.2d 419 (1993); *Wirth v. Ehly*, 93 Wis. 2d 433, 443–44, 287 N.W.2d 140 (1980).

181 Wis. 2d 453, 465, 510 N.W.2d 826 (Ct. App. 1993), *aff'd on other grounds*, 193 Wis. 2d 50, 532 N.W.2d 124 (1995). We now conclude that under § 632.32(5)(i) and *Dowhower*, UIM reducing clauses like those at issue here can no longer be considered to render coverage "illusory."

¶ 16. In the past, our analysis of whether UIM provisions rendered coverage "illusory" has been closely linked to a determination that such provisions violated public policy. *See Sweeney v. General Cas. Co.*, 220 Wis. 2d 183, 189–90, 582 N.W.2d 735 (Ct. App. 1998); *Meyer v. Classified Ins. Co.*, 192 Wis. 2d 463, 468–69, 531 N.W.2d 416 (Ct. App. 1995); *Hoglund*, 176 Wis. 2d at 271. However, courts are not the primary policy-making branch of government. That role is reserved for the legislature. *See City of Sun Prairie v. Davis*, 226 Wis. 2d 738, 755, 595 N.W.2d 635 (1999). If appellate courts and the legislature differ on the appropriate public policy, the legislative view prevails as long as the legislature is acting within constitutional limitations. *See Flynn v. DOA*, 216 Wis. 2d 521, 539, 576 N.W.2d 245 (1998). "[P]ublic policy is regularly adopted and promulgated in the form of legislation." *Brockmeyer v. Dun & Bradstreet*, 113 Wis. 2d 561, 573, 335 N.W.2d 834 (1983). In 1995, the legislature added subsection (5)(i) to WIS. STAT. § 632.32, which is titled, "Provisions of motor vehicle insurance policies." *See* 1995 Wis. Act 21, § 4. Section 632.32 now reads, in relevant part:

(5)   PERMISSIBLE PROVISIONS.

. . . .

(i)   A policy may provide that the limits under the policy for uninsured or underinsured motorist

coverage for bodily injury or death resulting from any one accident shall be reduced by any of the following that apply:

1. Amounts paid by or on behalf of any person or organization that may be legally responsible for the bodily injury or death for which the payment is made.

2. Amounts paid or payable under any worker's compensation law.

3. Amounts paid or payable under any disability benefits laws.

When we interpret a statute, "[w]e first examine the plain language of the statute and if the meaning is plain, we need not look further than the language itself to determine the statute's meaning." *Hanson*, 224 Wis. 2d at 366. The plain language of § 632.32(5)(i) indicates the legislature's view that UIM reducing clauses are permissible and do not violate public policy.

¶ 17. In *Sweeney*, we invalidated a UIM reducing clause under pre-WIS. STAT. § 632.32(5)(i) case law. *Sweeney*, 220 Wis. 2d at 196–97. Judge Deininger concurred:

> I have difficulty understanding what public policy is served by our present and prior holdings on the issue presented. We insist here and in *Kuhn [v. Allstate Ins. Co.]* that an insurance policy may not be written so as to guarantee that a certain dollar amount of insurance coverage will be available to compensate an insured when he or she is injured in an accident caused by another driver, if the policy provides that the specified sum will be paid in part by the tortfeasor's insurer and in part by the insured's own company. Yet, the coverage in question may be written, with judicial blessing, so as to limit the compensation available to the insured to the same fixed sum, provided it is paid entirely by

the tortfeasor's insurer. *The legislature apparently does not share this court's view that policy language such as the reducing clause at issue here violates public policy.* Section 632.32(5)(i)1, STATS., effective July 15, 1995, now permits a motor vehicle insurance policy to "provide that the limits under the policy for uninsured and underinsured motorist coverage for bodily injury . . . shall be reduced by . . . [a]mounts paid by or on behalf of any person or organization that may be legally responsible for the bodily injury . . . for which the payment is made."

*Id.* at 199 (emphasis added).

¶ 18. In *Dowhower*, the supreme court reviewed the facts, reasoning, and holdings of *Sweeney, Kuhn*, and *Hoglund*. *Dowhower*, 2000 WI 73 at ¶¶ 25–31. It then concluded that "[t]he state of the law was summed up in a concurrence to *Sweeney* by Judge Deininger" and quoted his analysis. *Dowhower*, 2000 WI 73 at ¶ 32. The court then held:

> When we consider these cases in conjunction with Wis. Stat. § 632.32(5)(i)1, we conclude that an insurer may reduce payments made pursuant to a UIM policy by amounts received from other legally responsible persons or organizations, provided that the policy clearly sets forth that the insured is purchasing a fixed level of UIM recovery that will be arrived at by combining payments made from all sources.

*Id.* at ¶ 33. The supreme court in *Dowhower* and Judge Deininger in *Sweeney* refer only to the first of the three subdivisions in WIS. STAT. § 632.32(5)(i). *Dowhower*, 2000 WI 73 at ¶ 33; *Sweeney*, 220 Wis. 2d at 199. However, we see no reason why our analysis here should not also apply to the other two subdivisions providing that UIM coverage may be reduced by amounts paid or

payable as worker's compensation and disability benefits. *See* WIS. STAT. § 632.32(5)(i)2 and 3. Therefore, our analysis applies to John Sukala's worker's compensation benefits as well as amounts the Sukalas received under Hasenohrl's liability policy.

¶ 19. We read the *Dowhower* court's statements to mean either that (1) unambiguous UIM reducing clauses can no longer be considered "illusory" or (2) asking whether unambiguous UIM reducing clauses are illusory is no longer a valid inquiry. Either conclusion is consistent with a well-settled general rule of insurance contract interpretation: If an insurance policy is unambiguous, then our analysis is complete, and we simply apply the terms of the policy rather than engaging in any construction.[12] *See, e.g., Rockline, Inc. v. Wisconsin Physicians Serv. Ins.*, 175 Wis. 2d 583, 590, 499 N.W.2d 292 (Ct. App. 1993).

¶ 20. In *Dowhower*, the supreme court did not overrule *Sweeney, Kuhn*, or *Hoglund*, and neither do we. "[O]nly the supreme court, the highest court in the state, has the power to overrule, modify or withdraw language from a published opinion of the court of appeals." *Cook v. Cook*, 208 Wis. 2d 166, 189–90, 560 N.W.2d 246 (1997). However, we must resolve any conflict between our past decisions and a supreme court opinion in favor of the supreme court opinion. *See State v. Ameritech Corp.*, 185 Wis. 2d 686, 696, 517 N.W.2d 705 (Ct. App. 1994), *aff'd*, 193 Wis. 2d 150, 532 N.W.2d 449 (1995). We conclude that under *Dowhower* and the declared public policy of the legislature in WIS. STAT.

---

[12] The *Dowhower* court noted that it still "recognize[s] that a reducing clause may be ambiguous within the context of the insurance contract." *Dowhower*, 2000 WI 73 at ¶ 35.

§ 632.32(5)(i), UIM reducing clauses complying with § 632.32(5)(i) cannot render UIM coverage "illusory." Once we have concluded that the UIM provisions of a policy are unambiguous, as we have here, then our inquiry is at an end.

*By the Court.*—Judgment affirmed.