Bobbie GOHDE and Rick Gohde, Plaintiffs-Appellants,†

v.

MSI INSURANCE COMPANY, Defendant-Respondent.

Court of Appeals

*No. 01–2121. Submitted on briefs November 11, 2003.—Decided March 23, 2004.*

2004 WI App 69

(Also reported in 679 N.W.2d 835.)

† Petition to review denied 6-8-04.

Hoover, P.J., concurs.

On behalf of the plaintiffs-appellant, the cause was submitted on the briefs of *Mark E. Gilbert* of *Giebel, Gilbert, Williams & Kohl, P.L.L.P.*, Roseville, Minnesota.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Joe Thrasher* of *Thrasher, Doyle, Pelish & Franti, Ltd.*, Rice Lake.

Nonparty briefs were filed by *Eric Englund* of Madison, for Wisconsin Insurance Alliance; and *Robert L. Jaskulski* of *Domnitz, Mawicke & Goisman, S.C.* for The Wisconsin Academy of Trial Lawyers.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. PETERSON, J. This appeal comes to us on remand from our supreme court. Bobbie and Rick Gohde appealed a summary judgment granted in favor of MSI Insurance Company. The circuit court determined the reducing clause in the Gohdes' underinsured motorist (UIM) policy, issued by MSI, was unambiguous. We summarily affirmed. *Gohde v. MSI Ins. Co.*, No. 01–2121, unpublished slip op. (WI App March 26, 2002) (*Gohde I*).

The supreme court summarily reversed and ordered the parties to rebrief in light of its decision in *Badger*

*Mut. Ins. Co. v. Schmitz*, 2002 WI 98, 255 Wis. 2d 61, 647 N.W.2d 223. We then concluded the policy language was ambiguous and reversed. *Gohde v. MSI Ins. Co.*, 2003 WI App 69, 261 Wis. 2d 710, 661 N.W.2d 470 (*Gohde II*). The supreme court again summarily reversed and remanded for further consideration in light of its decision in *Folkman v. Quamme*, 2003 WI 116, 264 Wis. 2d 617, 665 N.W.2d 857.[1] We now conclude the policy is unambiguous when read as a whole and we affirm.

## BACKGROUND

¶ 2.  In November 1996, the Gohdes were injured in an automobile accident in Chetek when Jamie Lemke lost control of her vehicle and struck the Gohdes' automobile. Several passengers in Lemke's vehicle were also injured. The Gohdes sued Lemke, and the parties agreed Lemke was 100% causally negligent. Lemke's two State Farm liability policies had limits of $50,000 per person and $100,000 per accident. State Farm paid these limits in varying amounts to the injured parties. Bobbie received $100,000 and Rick, $35,000. Bobbie's stipulated damages, however, were $200,000 and Rick's were $135,000.

¶ 3.  The Gohdes sought to recover the difference between their recovery from Lemke and their actual damages under their UIM policy. The UIM policy provides limits of $100,000 per person and $300,000 per accident. Prior to summary judgment, MSI paid Rick $65,000. MSI claimed it owed no more to Rick and nothing to Bobbie because of a reducing clause in the

---

[1] Following the release of *Folkman v. Quamme*, 2003 WI 116, 264 Wis. 2d 617, 665 N.W.2d 857, the parties supplied us with letter briefs addressing the decision.

UIM policy. The parties filed cross-motions for summary judgment. The Gohdes maintained the reducing clause was ambiguous and unenforceable and, therefore, MSI should pay Bobbie $100,000 and Rick an additional $35,000. MSI argued the reducing clause was unambiguous and claimed it had paid all it was obligated to pay under the policy.

¶ 4. The trial court agreed with MSI and the Gohdes appealed. We affirmed based on our decision in *Sukala v. Heritage Mut. Ins. Co.*, 2000 WI App 266, 240 Wis. 2d 65, 622 N.W.2d 457. In *Sukala*, we held a reducing clause that complied with WIS. STAT. § 632.32(5)(i) was valid, enforceable and could not be deemed illusory. *See id.*, ¶¶ 16–19. We concluded the MSI policy was not illusory because the reducing clause complied with this statute. *Gohde I*, No. 01–2121, unpublished slip op. at 2. We also concluded the policy was not ambiguous. *Id.*

¶ 5. After we affirmed, the supreme court decided *Schmitz*. There, the court determined it was not enough for a reducing clause to comply with WIS. STAT. § 632.32(5)(i), but rather the clause's effects must be "crystal clear in the context of the whole policy." *Schmitz*, 255 Wis. 2d 61, ¶¶ 46–49. Subsequently, the supreme court granted the Gohdes' petition for review, summarily reversed and remanded for further consideration in light of *Schmitz*.

¶ 6. On remand, we determined the policy's language was not "crystal clear" because "MSI's reducing clause conflicts with the limit of liability language . . . and with the declarations." *Gohde II*, 261 Wis. 2d 710, ¶ 21. Thus, we concluded the policy was ambiguous.

¶ 7. The supreme court subsequently decided *Folkman*, where it clarified the "crystal clear" standard. The court stated that it did not intend *Schmitz* to alter

the standard of review for whether an automobile insurance policy is ambiguous. "*Schmitz* and its predecessors do not demand perfection in policy draftsmanship. These decisions advise insurers to draft policies in a clear manner . . . ." *Folkman*, 264 Wis. 2d 617, ¶ 31. Thus, "crystal clear" is not the standard for ambiguity. The supreme court then reversed our decision in *Gohde II* and remanded for reconsideration in light of *Folkman*.

## DISCUSSION

¶ 8.   In determining whether an insurance policy is ambiguous, we must read the policy as a whole:   "There is a complementary principle to contextual ambiguity. Sometimes it is necessary to look beyond a single clause or sentence to capture the essence of an insurance agreement." *Folkman*, 264 Wis. 2d 617, ¶ 21. Furthermore, "The language of a policy should not be made ambiguous by isolating a small part from the context of the whole." *Id.*

¶ 9.   The Gohdes' policy is nineteen pages. The UIM coverage begins on page eight. The UIM limits of liability and the reducing clause are on page nine:

> The limit of liability shown in the Declarations for "each person" is our maximum limit of liability for all damages for bodily injury to any one person. The limit of liability shown for "each accident" is our maximum limit for all damages to two or more persons in the same accident.
>
> This is the most we will pay regardless of the number of insureds, claims made, vehicles or premiums shown in the Declarations, or vehicles involved in the accident.
>
> The limit of liability shall be reduced by:

1. all sums paid because of the bodily injury by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under the Liability Coverage of this policy, and

2. all sums paid or payable because of the bodily injury under any workers' compensation, disability benefits or any similar law.

Any payment under this coverage to or for an insured will reduce any amount that person is entitled to recover under the Liability Coverage of this policy.

In no event will an insured be entitled to recover duplicate payment for the same element of loss.

¶ 10. In *Gohde II*, the Gohdes argued the language in the policy's limit of liability conflicted with the language in the reducing clause. They contended that the limit of liability, described as "the most we will pay," gave the impression that the maximum amount is attainable. However, they argued, the reducing clause made that maximum amount impossible to attain. We agreed. Following *Schmitz* we concluded the policy's liability limit was not "crystal clear" because of the conflicting language. *Gohde II*, 261 Wis. 2d 710, ¶ 21. Accordingly, we held the policy was ambiguous.

██

¶ 11. As we have noted, the supreme court clarified the "crystal clear" language from *Schmitz* when it decided *Folkman*. *Folkman* warns that we cannot conclude a is policy ambiguous "by isolating a small part from the context of the whole." *Folkman*, 264 Wis. 2d 617, ¶ 21. In light of *Folkman*, we recently determined that a similar reducing clause was unambiguous in *Van Erden v. Sobczak*, No. 02–1595 (WI App Feb. 17, 2004). However, in that case we did not specifically discuss the "most we will pay" language that appears in the MSI

policy or how *Badger* and *Folkman* affect our interpretation of the policy. The tension between *Badger* and *Folkman* is critical to our decision here and thus we address it now. We must determine whether the MSI policy is ambiguous as a whole. We conclude that it is not.

¶ 12. We first look at the organization and structure of the policy. The policy is nineteen pages long and consists of a title page, an index, the declarations, and the terms of coverage. The bottom of the title page states: "READ YOUR POLICY CAREFULLY. This policy is a legal contract between you and us. It is written in 'easy to read and understand' language." The index follows the title page. The index lists the Uninsured Motorist and UIM coverage in Part C of the policy, beginning on page six. The declarations appear on page three and state the UIM coverage limits are $100,000 for each person and $300,000 for each accident. Part C of the policy is on pages six through ten. The UIM limits of liability and the reducing clause are on page nine.

¶ 13. We conclude there is nothing in the organization and structure that produces contextual ambiguity. The policy takes the insured through an orderly and logical sequence. The declarations page and index are roadmaps at the beginning of the policy. Nothing on the declarations page states that it is the entire policy. The index lists "Limits of Liability" as a subcategory of "Underinsured Motorists Coverage." The declarations page and index are not ambiguous simply because they fail to list every limit of liability and exclusion. As the supreme court stated in *Folkman*, 264 Wis. 2d 617, ¶ 56, "Courts cannot ask for an informative declarations page and then fault the insurer for failing to

319

address every nuance and speculative interpretation of coverage that an insured might raise."

¶ 14.  A reasonable insured would review the declarations page, and then be directed by the index to the limits of UIM coverage. Here, the insured would find the reducing clause. The reducing clause states what is the most that will be paid under the policy, and then immediately informs the insured that those amounts "shall be reduced" in certain circumstances.

¶ 15.  The Gohdes argue the conflict between "the most we will pay" language and the reducing clause causes ambiguity. Even if we were to assume that some degree of ambiguity exists, it is not "sufficient to engender an objectively reasonable alternative meaning and, thereby, disrupt an insurer's otherwise clear policy language[.]" *Folkman*, 264 Wis. 2d 617, ¶ 30. The policy's statement regarding the most it will pay cannot be read to the exclusion of all other relevant provisions of the policy. *Id.*, ¶ 21. Further, "Ferreting through a policy to dig up ambiguity should not be judicially rewarded because this sort of ambiguity is insufficient." *Id.*, ¶ 32.

¶ 16.  We recently reviewed a similar UIM policy in *Commercial Union Midwest Ins. Co. v. Vorbeck*, 2004 WI App 11, 674 N.W.2d 665. There, the policy referred to "our maximum limit of liability." A reducing clause followed. Vorbeck contended the reducing clause was unenforceable because it contradicted the insurer's obligation to pay the maximum amount. *Id.*, ¶¶ 28, 36–38. We concluded the statement regarding the insurer's maximum of its limit of liability did not represent "an unequivocal commitment to pay the maximum limits of liability *to the exclusion of other relevant provisions of the policy." Id.*, ¶ 39. Instead, we determined that the insurer "will pay the maximum

limits of liability *in the appropriate case and under the appropriate circumstances subject to the terms of the insurance policy read as a whole." Id.*

¶ 17. We reach the same conclusion here. The policy is not susceptible to more than one reasonable interpretation, and the language is not contextually ambiguous.

*By the Court.*—Judgment affirmed.

¶ 18. HOOVER, P.J. (*concurring*). I think the policy in our case, while not presenting an organizationally complex "maze," is "plainly contradictory" in exactly the same manner as the policy in *Badger Mut. Ins. Co. v. Schmitz*, 255 Wis. 2d 61, 647 N.W.2d 223. The question is, is this enough? Are the "false signals," *Folkman v. Quamme*, 2003 WI 116, ¶ 55, 264 Wis. 2d 617, 665 N.W.2d 857, the policy sends to Gohde sufficient to avoid the reducing clause, or in light of *Folkman*, is more needed? Given the tenor of *Folkman*, I agree with the majority and our other post-*Folkman* cases that the inconsistencies partially driving the *Schmitz* decision, as explicated in *Folkman*, would now, in context, be seen by our supreme court as only benignly ambiguous. Thus, the supreme court would conclude, these inconsistencies would not engender objectively reasonable alternative meanings.

¶ 19. *Folkman* carefully compared the policy before it to that in *Schmitz*. *Schmitz* dealt with a lengthy and complex insurance policy. But, according to *Folkman*, this was not the exclusive basis upon which the *Schmitz* court held that the policy's reducing clause was inoperative. Rather, *Folkman* further teaches that "a policy should avoid inconsistent provisions, provisions that build up false expectation, and provisions that produce reasonable alternative meanings." *Folkman,*

264 Wis. 2d 617, ¶ 31. However, "inconsistencies in the context of a policy must be material to the issue in dispute and be of such a nature that a reasonable insured would find an alternative meaning." *Id.*, ¶ 32.

¶ 20. In comparing the *Folkman* circumstances to those in *Schmitz*, the supreme court noted in the latter case that "a reasonable insured would likely believe that the purchase of, say, $200,00 in underinsured motorist coverage would lead to a $200,000 payment from the insurer depending on the insured's level of damages" because this was the limit stated in the declarations. *Folkman*, 264 Wis. 2d 617, ¶ 51. But, as the *Folkman* court noted, "because the policy contained a reducing clause, the insurer would *never* pay $200,000 to the insured . . . ." *Id.* The *Folkman* court went on to observe that the effect of the reducing clause was only made clear in the reducing clause itself, with no explanation. *Id.*, ¶ 53. This appears to be material because the *Folkman* court goes on to note that the UIM page contained a "typical limits of liability provision followed immediately after the schedule for underinsured motorist coverage. It stated, among other things, 'This is the most we will pay,' implying that it would pay the policy limits, although it never would." *Id.* Thus, the *Folkman* court observed, *Schmitz* concluded that the policy there at issue was "a maze that is organizationally complex and plainly contradictory." *Id.*, ¶ 55.

¶ 21. As implied, I think at the core of *Folkman* is the supreme court's tacit retreat from some of the very considerations that led to the result in *Schmitz*, its painstaking references to that case notwithstanding. Thus, even though our case presents some features

similar to the *Schmitz* case, I agree with the majority that the policy at issue is not ambiguous under *Folkman*.