# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

Nos. 03-3702 & 03-3835

ALLSTATE INSURANCE COMPANY,

*Plaintiff-Appellee, Cross-Appellant,*

*v.*

DONNA E. KECA and TRISHA BONTEMPO,
Individually and as Guardian of Miranda Bontempo,

*Defendants-Appellants, Cross-Appellees.*

———————

Appeals from the United States District Court
for the Eastern District of Wisconsin.
No. 02 C 746—**Rudolph T. Randa**, *Chief Judge.*

———————

ARGUED APRIL 1, 2004—DECIDED MAY 20, 2004

———————

Before FLAUM, *Chief Judge*, and COFFEY and EVANS, *Circuit Judges*.

FLAUM, *Chief Judge*. This appeal presents the question whether an underinsured motorist ("UIM") reducing clause contained in the insurance policies held by the defendants is enforceable under Wisconsin law, and if so, how the clause applies. A severe automobile collision involving an underinsured motorist and Donna E. Keca ("Keca"), Trisha Bontempo ("Bontempo") and Miranda Bontempo, a minor, led to this action. In dispute is the amount of UIM benefits

Keca and Bontempo (collectively "defendants") are owed by their insurer, Allstate Insurance Company ("Allstate"). Before the district court, Allstate sought a declaratory judgment that it owes no more than the $250,000 in UIM benefits that it has already tendered to Keca and Bontempo under the policies issued to them. The defendants appeal the district court's ruling allowing an offset from Allstate's coverage for the payment received by the defendants from the tortfeasor's insurance company. Allstate cross-appeals the district court's grant of summary judgment to the defendants on the basis that the benefits Allstate paid to Bontempo may not be offset from other coverage owed to Keca by Allstate. For the reasons stated in this opinion, we affirm the judgment of the district court.

## I.  Background

On November 21, 2001, Trisha Bontempo was driving her car in which her mother, Donna Keca, and four-year-old daughter, Miranda Bontempo, were passengers. The Bontempo vehicle was struck by a car driven by an intoxicated and underinsured motorist, Tina Cogley. The Bontempos and Keca sustained serious injuries as a result of the collision. It is undisputed that collectively their medical bills are in excess of $449,000. As too often is the case with reckless drivers, Cogley did not carry enough insurance to cover the defendants' injuries. The defendants received only $50,000 under Cogley's bodily injury liability.

At the time of the accident, both Keca and Bontempo were holders of Allstate automobile insurance policies (the "Keca policy" and the "Bontempo policy" or generally the "Allstate policy") which included UIM coverage. The Keca policy has applicable UIM limits of $300,000 for each accident and the Bontempo policy has applicable UIM limits of $100,000 for each accident. Keca resides at the same address as the Bontempos, making them "resident relatives" covered under

each other's insurance policies. It is undisputed that for the accident at issue the Bontempo UIM coverage was primary and the Keca UIM coverage was excess. Allstate has tendered to the defendants $50,000 in UIM benefits under the Bontempo policy and $200,000 in UIM benefits under the Keca policy.

Except as to coverage amounts, the Keca and Bontempo policies are virtually identical. The policies are forty-seven pages in length, including the main policy jacket and the added endorsements. The "Auto Policy Declarations" ("declarations") page, containing a chart that reflects the amounts of coverage, types of coverage, premiums, and deductibles, appears at the beginning of each policy. The declarations page sets forth the amount of UIM limits and lists the documents that comprise the policy, including Amendatory Endorsement form AU 1440-3 ("AU 1440-3"). AU 1440-3 is a standalone document located at the end of each policy that contains changes, amendments, and additions to the provisions contained within the main policy jacket. The heading at the top of page 1 of AU 1440-3 states, "This Endorsement Changes Your Policy—Keep It With Your Policy". AU 1440-3 contains—within five pages—all the UIM-related provisions. The following basic UIM coverage provisions are set forth on page 12 of AU 1440-3:

**Part VII**

**Underinsured Motorists Coverage**

**Coverage SU**

If your policy declarations indicates that you have this coverage, we will pay those damages that an insured person is legally entitled to recover from the owner or operator of an underinsured auto because of bodily injury sustained by an insured person.

The UIM "Limits of Liability" provision, set forth three pages later, states that the coverage limit shown on the policy declarations for "'each accident' is the maximum we will pay for damages arising out of bodily injury to two or more persons in any one motor vehicle accident." The UIM reducing clause, which appears immediately below the Limits of Liability provision, states in part as follows:

The limit of Underinsured Motorists Coverage shall be reduced by:

1. all amounts paid by or on behalf of any person or organization that may be legally responsible for the bodily injury for which the payment is made, including, but not limited to, any amounts paid under the bodily injury liability coverage of this or any other insurance policy. . . .

Based on these provisions, Allstate calculates the amount it owes to the defendants as follows: the $50,000 received from the tortfeasor, Cogley, was offset against the UIM limits of both policies, leaving $50,000 in UIM benefits under the Bontempo policy, which Allstate tendered, and $250,000 in UIM benefits under the Keca policy. The $50,000 in UIM benefits Allstate tendered under the Bontempo policy was offset against the $250,000 UIM coverage under the Keca policy, leaving $200,000 in UIM benefits under that policy, which Allstate also tendered. It is Allstate's position that it has fulfilled its UIM coverage obligations under the plain language of both insurance policies. The defendants contend that the reduction clause is unenforceable and they are entitled to $100,000 in UIM benefits under the Bontempo policy and $300,000 in UIM benefits under the Keca policy, for a combined total of $400,000 in Allstate UIM benefits.

Allstate commenced this action seeking a declaratory judgment that the UIM reducing clauses in the Keca and Bontempo policies are enforceable, and therefore, no

benefits beyond the $250,000 already tendered is owed to the defendants by Allstate. The district court had jurisdiction over the action, pursuant to 28 U.S.C. § 1332(a), because there was complete diversity of citizenship between the parties, and the amount in controversy was in excess of $75,000. Both parties filed motions for summary judgment. In its order denying summary judgment to Allstate and granting judgment in part to the defendants, the district court rejected Allstate's bid to reduce Keca's UIM benefits by the $50,000 paid under the Bontempo policy. However, the district court also found that Allstate's reducing clause was not ambiguous in the context of the policy as a whole and therefore approved the $50,000 reduction Allstate made to each policy as a result of the payment tendered by Cogley's liability carrier. Allstate now appeals the former decision, and the defendants appeal the latter.

## II. Discussion

A federal court sitting in diversity has the obligation to apply the law of the state as it believes the highest court of the state would apply it if presented with the issue. *See Lexington Ins. Co. v. Rugg & Knopp, Inc.*, 165 F.3d 1087, 1090 (7th Cir. 1999). In this case, interpretation of Allstate's insurance policy is governed by the substantive law of Wisconsin, the forum state. In Wisconsin, the interpretation of an insurance contract and the conclusion as to whether coverage exists are questions of law. *See Ledman v. State Farm Mut. Auto Ins. Co.*, 601 N.W.2d 312, 314 (Wis. Ct. App. 1999). We review grants of summary judgment *de novo* to determine whether any genuine issue of material fact exists and whether the moving party is entitled to judgment as a matter of law. *See Williams v. Anderson*, 959 F.2d 1411, 1413 (7th Cir. 1992).

A. Enforceability of Reducing Clause

Prior to 1995, a number of Wisconsin courts found reducing clauses void because they rendered purported UIM coverage illusory. *See, e.g.*, *Kuhn v. Allstate Ins. Co.*, 510 N.W.2d 826, 827 (Wis. Ct. App. 1993). Courts deemed UIM coverage subject to a reducing clause illusory because the full coverage amount would never actually be paid by the insurer (as the underinsured motorist would always be contributing some portion of the payment). *See, e.g.*, *id.* at 830. In 1995, the Wisconsin Legislature passed a statute, Wis. Stat. § 632.32(5)(i), specifically allowing for UIM reducing clauses that operate to decrease the amount of the insured's total damages subject to UIM coverage from the insurer by any amounts received from the underinsured tortfeasor. Since the statute's passage, considerable litigation relating to the validity and enforceability of reducing clauses has continued to occur in Wisconsin courts. The Wisconsin Supreme Court itself described UIM coverage as a " 'legal iceberg,' a seemingly straightforward area of the law, which in fact can prove to be nettlesome to analyze." *Badger Mut. Ins. Co. v. Schmitz*, 647 N.W.2d 223, 227 (Wis. 2002) (quoting *Dowhower v. W. Bend Mut. Ins. Co.*, 613 N.W.2d 552, 562 (Wis. 2000)).

In *Dowhower*, the Wisconsin Supreme Court concluded that Wis. Stat. § 632.32(5)(i) does not violate substantive due process under the state or federal constitutions. *Id.* at 565. It also held that the type of reducing clauses authorized by the statute are neither ambiguous nor against public policy. *Id.* at 562. Two years later, in *Schmitz*, the Wisconsin Supreme Court explained that although a reducing clause may itself be clear, courts must still consider whether it is unambiguous in the context of the entire policy. 647 N.W.2d at 233. In that case, the court invalidated an otherwise unambiguous reducing clause that did not, when viewed in the context of the entire policy, clearly set forth that the insured was purchasing a fixed

level of UIM recovery arrived at by combining payments from all sources. *Id.* at 238. In reaching this decision, the court stated that the reducing clause "must be crystal clear in the context of the whole policy." *Id.* at 233.

Focusing on the "crystal clarity" language, a number of appellate courts post-*Schmitz* invalidated reducing clauses after finding that they were contextually ambiguous. *See Gohde v. MSI Ins. Co.*, 661 N.W.2d 470, 471 (Wis. Ct. App. 2003); *Dowhower v. Marquez*, 659 N.W.2d 57, 59 (Wis. Ct. App. 2003); *Hanson v. Prudential Prop. & Cas. Ins. Co.*, 653 N.W.2d 915, 916 (Wis. Ct. App. 2002). However, this trend was short-lived—the Wisconsin Supreme Court put the breaks on expansive interpretations of the ambiguity standard in the case *Folkman v. Quamme*, 665 N.W.2d 857, 866-70 (Wis. 2003). *Folkman* itself did not involve a UIM reducing clause, but the opinion provided an extensive discussion of such clauses. The *Folkman* court observed that the "crystal clear" language it used in *Schmitz* had produced the "unintended effect" of "alter[ing] the analytical focus" in a series of court of appeals decisions. *Id.* at 868-69. The court went on to emphasize that perfection in draftsmanship was not the standard by which policies should be measured. *Id.* at 869. Rather, the court explained that "[t]o prevent contextual ambiguity, a policy should avoid inconsistent provisions, provisions that build up false expectations, and provisions that produce reasonable alternative meanings." *Id.* The court admonished that "[f]erreting through a policy to dig up ambiguity should not be judicially rewarded because this sort of ambiguity is insufficient. Rather, inconsistencies in the context of a policy must be material to the issue in dispute and be of such a nature that a reasonable insured would find an alternative meaning." *Id.*

After *Folkman* was released, the Wisconsin Supreme Court summarily vacated and remanded a series of appellate court decisions for further consideration in light of

*Folkman. See Gohde v. MSI Ins. Co.*, 668 N.W.2d 556 (Wis. 2003); *Dowhower v. Marquez*, 668 N.W.2d 735 (Wis. 2003); *Van Erden v. Sobczak*, 668 N.W.2d 735 (Wis. 2003). Relying on the directives from *Folkman*, courts reviewing two of these three vacated cases changed their prior positions and found the reducing clauses at issue to be contextually unambiguous. *See Gohde v. MSI Ins. Co.*, No. 01-2121, 2004 Wisc. App. LEXIS 252, at *11 (Wis. Ct. App. Mar. 23, 2004) (policy not susceptible to more than one reasonable interpretation and language not contextually ambiguous); *Van Erden v. Sobczak*, No. 02-1595, 2004 Wisc. App. LEXIS 40, at **16-17 (Wis. Ct. App. Feb. 17, 2004) (UIM coverge reducing clause clear and unambiguous). *But see Dowhower v. Marquez*, 674 N.W.2d 906, 908 (Wis. Ct. App. 2003) (UIM provisions contextually ambiguous). An additional post-*Folkman* appellate court decision, *Commercial Union Midwest Ins. Co. v. Vorbeck*, 674 N.W.2d 665, 676 (Wis. Ct. App. 2003), also determined that the UIM reducing clause at issue was unambiguous.

Accordingly, in *Folkman*, the Wisconsin Supreme Court clarified that "crystal clear" is not the standard for reviewing UIM reducing clauses in insurance contracts, and following this clarification, the appellate courts have been more reluctant to invalidate such clauses. While *Schmitz* may have caused a momentary rush at the intermediate level towards finding contextual ambiguity, *Folkman* has clearly turned back this tide. The defendants submit that the law on this issue is in a state of flux in Wisconsin and request that we certify the issue of whether Allstate's UIM reducing clause is enforceable to the Wisconsin Supreme Court. However, we conclude that the rules of decision in this case have been clearly set out by the Wisconsin Supreme Court in *Schmitz* and *Folkman* and nothing would be gained through certification.

Against this backdrop, we now turn to the Allstate policy. The declarations page in the policy specifically lists

"Underinsured Motorists Insurance for Bodily Injury" and the monetary limits for such coverage. The defendants argue that ambiguity is created because there is no indication on the declarations page that the UIM maximum coverage may be subject to further limitations due to the reducing clause appearing later in the policy. However, Wisconsin courts have expressly, and wisely, rejected this argument. *See, e.g.*, *Sukala v. Heritage Mut. Ins. Co.*, 622 N.W.2d 457, 461 (Wis. Ct. App. 2000) ("A declarations page is intended to provide a summary of coverage and cannot provide a complete picture of coverage under a policy."). The declarations page in the Allstate policy lists many coverages (e.g., bodily injury, property damage) without describing all applicable coverage benefits and restrictions set forth in the policy jacket and endorsements. A detailed description on the declarations page of *all* of the policy's coverage benefits and restrictions would arguably only create confusion.

After the declarations page, UIM coverage is not mentioned again for nearly forty pages, at which point the UIM endorsement is found within AU 1440-3. The defendants argue that ambiguity arises from the omission of references to UIM coverage on various pages throughout the policy appearing before the UIM endorsement. We disagree. Insurers routinely add new coverages to their insureds' policies by way of endorsement. Wisconsin courts have found that the fact that UIM provisions appear in an endorsement instead of the policy jacket does not create ambiguity. *See, e.g.*, *Vorbeck*, 674 N.W.2d at 673-74 (finding UIM reducing clause added to policy by endorsement unambiguous). Even though it appears toward the end of the policy, a reasonable insured would have no problem locating the UIM endorsement. Moreover, the fact that all provisions relating to UIM coverage, including the reducing clause, are set forth in the separate, standalone endorsement arguably makes the coverage easier for insureds to locate and understand than if the UIM provisions were spread throughout various sections of the policy.

Although it is undisputed that the reducing clause itself is unambiguous, defendants argue that other provisions included in the UIM endorsement as well as the endorsement's structure create confusion and ambiguity. Again, we disagree. The Limits of Liability subsection of the UIM endorsement explains that the coverage limit shown on the declarations page ($300,000 per accident for Keca, $100,000 per accident for Bontempo) is the "maximum that we will pay for damages arising out of bodily injury . . . ." The reducing clause is located directly below the "Limits of Liability" subsection. Thereafter, the "If There Is Other Insurance" subsection appears and states in part: "If more than one policy applies on a primary basis to an accident involving your insured auto, we will bear our proportionate share with other collectible underinsured motorists insurance . . . . If the insured person was in, on, getting into or out of a vehicle you do not own which is insured for this coverage under another policy, we will pay up to your policy limits only after all other collectible insurance has been exhausted."

A reasonable insured reading these provisions would understand that the insured purchased a fixed level of UIM recovery which will be arrived at by combining payments made from all sources. *See Schmitz*, 647 N.W.2d at 231. It would be clear to the insured that the UIM coverage limits are subject to a reduction, thereby putting the insured on notice that the full policy limits may not be payed out from the insurer. The policy is reasonably orderly and logical. None of the provisions are inconsistent. The policy does not set up roadblocks that would confuse reasonable insureds as they attempt to navigate their way through the policy. We are unpersuaded by the fragmented comparisons that the defendants draw between the Allstate policy and the policies determined to be ambiguous in *Schmitz, supra*, and *Hanson v. Prudential Prop. & Cas. Ins. Co.*, 653 N.W.2d 915 (Wis. Ct. App. 2002) (a case the supreme court criticized in

*Folkman*). The defendants present us with a laundry list of alleged infirmities found within the Allstate policy, but this sort of "[f]erreting through a policy to dig up ambiguity" was rejected in *Folkman*. 665 N.W.2d at 869. Simply put, Allstate's policy does not create a maze for its insured that is organizationally complex and plainly contradictory, as was the case in *Schmitz*.

B.  Application of Reducing Clause

The next question we consider is whether Allstate is allowed to reduce the UIM limits of the Keca policy by the $50,000 in UIM limits it tendered under the Bontempo policy. Again, the reducing clause in the Keca and Bontempo policies states that UIM coverage shall be reduced by:

> 1. all amounts paid by or on behalf of any person or organization that may be *legally responsible* for the bodily injury for which they payment is made, including, but not limited to, any amounts paid under the bodily injury liability coverage of this or any other insurance policy.

(emphasis added).

Finding that Allstate may not offset benefits paid under the Bontempo policy from payments it owes to Keca, the district court accepted the reasoning of a Wisconsin appellate court decision that addressed a similar question. *See Janssen v. State Farm Mut. Auto. Ins. Co.*, 643 N.W.2d 857 (Wis. Ct. App. 2002). Janssen held that language in a reducing clause similar to the one at issue in this case did not permit the insurer to reduce its liability for uninsured motorist ("UM") coverage. Allstate argues that we are not bound by *Janssen*, since it is a lower state court decision, and the Wisconsin Supreme Court has not yet ruled on the issue. However, in situations where a state supreme court

has not reached an issue, the rulings of the intermediate court control, unless there is a persuasive indication that the highest court would decide the issue differently. *See Lexington Ins. Co. v. Rugg & Knopp, Inc.*, 165 F.3d 1087, 1090 (7th Cir. 1999). *See also Liberty Mut. Ins. Co. v. Triangle Indus., Inc.*, 957 F.2d 1153, 1156 (4th Cir. 1992) (noting that in circumstances where a state's highest court has not spoken on an issue decisions from "the state's intermediate appellate court decisions 'constitute the next best indica of what state law is,' although such decisions 'may be disregarded if the federal court is convinced by other persuasive data that the highest court of the state would decide otherwise.'") (quoting 19 Charles A. Wright, Arthur R. Miller & Edward Cooper, *Federal Practice & Procedure* § 4507, at 94-95 (1982)). In this case, we are not persuaded that the Wisconsin Supreme Court would take a position different from the one set forth in *Janssen*.

The court in *Janssen* supported its decision with precedent set by the Wisconsin Supreme Court in *Employers Health Ins. v. General Cas. Co.*, 409 N.W.2d 172, 177 (Wis. 1991). *Employer's Health* held that the plaintiff's subrogation clause that referred to a "responsible third party," clearly meant "a party responsible for the insured's injury and not to an insurer providing uninsured motorist coverage to the insured." *Id.* Adopting this reasoning, the *Janssen* court concluded that the phrase "responsible third party" was similar to the term "legally responsible." 643 N.W.2d at 863. After drawing this comparison, the *Janssen* court held that the term "legally responsible" did not encompass "contractually responsible" (i.e., UM/UIM carriers) parties. *Id.* Therefore, the UM carrier was not entitled to reduce benefits by payments from other UM/UIM policies. *Id.*

In the absence of authority from Wisconsin's highest court or a compelling indication that it would hold to the contrary, there is no reason for us to deviate from this reasoned

position. Accordingly, the district court correctly required Allstate to pay an additional $50,000 in UIM benefits under the Keca policy.

### III.  Conclusion

For the reasons stated above, we AFFIRM the judgment on the district court.

A true Copy:

      Teste:

                     _____
                     *Clerk of the United States Court of*
                        *Appeals for the Seventh Circuit*