Gary HANSON, Kathy Hanson and Federal Foam Technologies, Inc., Plaintiffs-Respondents-Cross-Appellants,

v.

PRUDENTIAL PROPERTY & CASUALTY INSURANCE COMPANY, Defendant-Appellant-Cross-Respondent.†

Court of Appeals

*No. 02–0019. Submitted on briefs October 7, 2002.—Decided October 29, 2002.*

2002 WI App 275

(Also reported in 653 N.W.2d 915.)

† Petition to review dismissed 12-2-02.

On behalf of the defendant-appellant-cross-respondent, the cause was submitted on the briefs of *Shawn M. Raiter* of *Larson King LLP* of St. Paul, MN.

On behalf of the plaintiffs-respondents-cross-appellants, the cause was submitted on the briefs of

■■■■■■■■■■■■

■■■■■■■■■■■■

*Timothy T. Sempf* and *Jason W. Whitley* of *Novitzke, Gust, Sempf & Whitley* of Amery.

On behalf of the Wisconsin Academy of Trial Lawyers, the cause was submitted on the amicus curiae brief of *Robert L. Jaskulski* of *Domnitz, Mawicke & Goisman, S.C.* of Milwaukee.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. CANE, C.J. Prudential Property and Casualty Insurance Company appeals a judgment declaring its reducing clause unenforceable. Prudential sought to enforce a reducing clause contained in Gary Hanson's underinsured motorist (UIM) policy and limit its liability to $25,000 based on payments Hanson received from the underinsured motorist's insurer. The circuit court denied Prudential's motion, determining the policy was ambiguous and the reducing clause unenforceable.

¶ 2. On appeal, Prudential contends the circuit court erred in this determination and argues its UIM coverage is not ambiguous based on the relevant statutory and case law involving UIM reducing clauses.[1] The Hansons cross-appeal, arguing Prudential is barred from enforcing the reducing clause because it failed to raise the issue on a prior summary judgment motion, which Prudential also appealed. We conclude both the reducing clause itself and the policy as a whole failed to clearly inform Hanson as to the amount of UIM coverage he was purchasing and therefore affirm the judgment. As a result, we do not address the Hansons' cross-appeal.

---

[1] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

## BACKGROUND

¶ 3. The facts are undisputed. In September 1995, Gary Hanson was injured in an automobile accident. He was not at fault and settled with the tortfeasor, Thomas Pietz, for Pietz's automobile insurance liability limit of $150,000. Hanson's damages, however, exceeded this limit and he sought coverage under his Prudential UIM policy, which provided $100,000 coverage for each person injured in an accident involving an underinsured motorist. On cross-motions for summary judgment, the trial court determined Hanson (1) qualified for UIM coverage under a "damages basis" definition of underinsured motorist in a prior version of his Prudential policy and (2) was entitled to stack his UIM coverage. Prudential appealed, and we affirmed the trial court's determination of the "damages basis" definition but reversed the decision allowing Hanson to stack his coverage. *See Hanson v. Prudential Prop. & Cas. Ins. Co.*, 224 Wis. 2d 356, 367–71, 591 N.W.2d 619 (Ct. App. 1999).

¶ 4. After the appeal, Prudential offered Hanson $25,000 to settle his UIM claim, based on a reducing clause in his UIM policy. After Hanson refused the offer, Prudential filed a declaratory judgment motion to determine its liability under the policy. The circuit court denied Prudential's request, finding the policy's UIM coverage "misleading, confusing, arguably contradictory, and . . . therefore ambiguous with regard to UIM coverage limits." Prudential appeals. Hanson cross-appeals, arguing Prudential is barred from asserting the reducing clause because it failed to do so on summary judgment.

713

## DISCUSSION

¶ 5. The construction or interpretation of an insurance policy presents a question of law we review de novo. *Hull v. State Farm Mut. Auto. Ins. Co.*, 222 Wis. 2d 627, 636, 586 N.W.2d 863 (1998). If the language in an insurance policy is unambiguous, we must not rewrite the policy by construction. *See Dowhower v. West Bend Mut. Ins. Co.*, 2000 WI 73, ¶ 34, 236 Wis. 2d 113, 613 N.W.2d 557. If the policy is ambiguous, we must construe these ambiguities in favor of coverage. *Id.* When construing ambiguous language, we attempt to determine what a reasonable person in the position of the insured would have understood the policy's words to mean. *Id.* at ¶ 35.

¶ 6. Reducing clauses in UIM policies are authorized by Wis. Stat. § 632.32(5)(i). This statute reads:

(5) Permissible provisions. . . .

(i) A policy may provide that the limits under the policy for uninsured or underinsured motorist coverage for bodily injury or death resulting from any one accident shall be reduced by any of the following that apply:

1. Amounts paid by or on behalf of any person or organization that may be legally responsible for the bodily injury or death for which the payment is made.

2. Amounts paid or payable under any worker's compensation law.

3. Amounts paid or payable under any disability benefits laws.

714

¶ 7. UIM reducing clauses are valid if "the policy clearly sets forth that the insured is purchasing a fixed level of UIM recovery that will be arrived at by combining payments made from all sources." *Dowhower*, 2000 WI 73 at ¶ 33. Recently, in *Badger Mut. Ins. Co. v. Schmitz*, 2002 WI 98, 647 N.W.2d 223, our supreme court clarified the analysis for determining the validity of UIM reducing clauses. There, the court determined a UIM reducing clause is not valid merely because its terms are unambiguous and it complies with WIS. STAT. § 632.32(5)(i). *See id.* at ¶¶ 48–49. Rather, the clause must be "crystal clear in the context of the whole policy." *Id.* at ¶ 46. If the coverage provided is misleading and unclear, the policy is ambiguous or worse, and the reducing clause is not enforceable. *Id.* at ¶ 49.

¶ 8. Hanson's thirty-three-page policy consists of declarations, five coverage parts, and a set of Wisconsin-specific provisions. The declarations list the UIM coverage limits for bodily injury to each person at $100,000 and for each accident at $300,000. At the bottom of the first and the top of the second declaration pages, the following statement appears: "Your policy is made up of your application, your most recent Declarations, and the forms and endorsements listed below. Forms and endorsements being made part of your policy with this transaction are provided in separate booklets or are indexed and reproduced on pages which follow." Below this statement on the second page of the declarations, the following are listed: (1) PAC 186, which is policy parts one, two, and three, (2) PAC 226 WI, which is the special state provisions, and (3) PAC 190/WI, which is policy parts four and five.

¶ 9. Policy part one contains the general provisions. This includes a provision titled "DECLARATIONS" that reads:

> The Declarations is an important part of this policy. It lists the named insured and describes the cars this policy covers. Refer to the Declarations to see which parts of the policy apply and what amounts of insurance you have for each of your cars. You only have the coverage for which a specific premium charge is shown for the coverage. You will receive a Declarations when the policy is first issued, each time a change is made and at each renewal.

¶ 10. Below the "DECLARATIONS" provision is a paragraph entitled "ENDORSEMENTS." It reads:

> Endorsements are part of this policy. They add to, delete, or change parts of the policy. They may be necessary to conform to the laws of your state or to new programs we have implemented. Only those Endorsements whose numbers appear on the Declarations are part of your policy.

¶ 11. The general provisions also contain a "LIMIT OF COVERAGE," that reads in relevant part, "If you or any other person insured under this policy is in an accident: 1. In a car that is insured by this policy—We will not pay more than the limit of coverages for that particular car." Under the terms of the special state provisions in PAC 226 WI, this section does not apply to part four of the policy, the uninsured motorists coverage (UM).

¶ 12. The UIM coverage is listed in part five, which begins on page twenty-four of the policy. The first clause of part five, listed under a heading "OUR OBLIGATIONS TO YOU," reads:

716

UNDERINSURED MOTORISTS COVERAGE

If you have this coverage (see the Declarations), we will pay up to our limit of liability for bodily injury that is covered under this part when an insured (whether or not occupying a car) is struck by an underinsured motor vehicle. Our payment is based on the amount that an insured is legally entitled to recover for bodily injury because:

THE OWNER OR DRIVER IS UNDERINSURED

The owner or driver responsible for the accident has liability insurance or a liability bond in an amount that is less than the limits shown for this coverage on the Declarations.

¶ 13. Part five also limits the liability for bodily injury suffered by each person through the following clause:

The limit stated under UNDERINSURED MOTOR-ISTS—EACH PERSON on the Declarations is the limit of our liability less all amounts recovered for all damages, including damages for care or loss of services, arising out of bodily injury to one person as a result of any one accident.

¶ 14. The policy limits this liability further through the reducing clause found on the last page of PAC 226 WI, which is also the last page of the policy. It reads:

The limit of liability for this coverage will be reduced by any amounts paid by the person responsible for the accident. The limit of liability for this coverage will also be reduced by an amount paid under any other source; however, in no event will the limit of liability be reduced below the Financial Responsibility Limit.

¶ 15. Part four of the policy, the uninsured motorists coverage, contains a similar "limit of liability" clause as part five. The only difference is that it lacks

the "less all amounts recovered" language found in the UIM limit. In addition, PAC 226 WI applies an identical reducing clause to part four.

¶ 16. Prudential argues the reducing clause and the rest of the policy are unambiguous and would inform a reasonable insured that his or her UIM coverage would be arrived at by a combination of sources. Accordingly, Prudential seeks to enforce the reducing clause and limit its liability to $25,000, which was the financial responsibility limit at the time of the accident.[2] We agree, however, with the trial court's determination that the policy is ambiguous, confusing, misleading and contradictory and, therefore, hold the reducing clause unenforceable.

¶ 17. At the outset, we determine the reducing clause does not comply with Wis. Stat. § 632.32(5)(i). The public policy of this state, as reflected in this statute, is to allow insurers to reduce UIM liability only by amounts paid to the insured by or on behalf of persons or organizations legally responsible for the injury suffered, or by worker's compensation or disability benefits law. *See* Wis. Stat. § 632.32(5)(i); *Dowhower*, 2000 WI 73 at ¶ 20. The reducing clause in Prudential's UIM coverage reduces liability by any amounts paid by the person responsible for the accident or "paid under any other source." This goes beyond the permissible reducing sources allowed by the statute. A UIM policy with a reducing clause must clearly inform the insured he or she is "purchasing a fixed level of UIM

---

[2] Hanson recovered $150,000 from the tortfeasor, exceeding his $100,000 in UIM coverage. Even if the reducing clause is enforceable, Prudential must still pay the financial responsibility limit.

recovery that will be arrived at by combining payments made from all sources." *Id.* at ¶ 33. "All sources," however, can only include the three listed in the statute. Prudential's policy, by saying the insured's UIM coverage would be reduced by payments from any and every source, rather than the three allowed by statute, does not clearly inform the insured of the level of UIM coverage actually purchased.

¶ 18. The preceding analysis presumes a reasonable insured would be able to find and understand the effect of the reducing clause within the context of the entire policy. We cannot say this is the case. Even if the reducing clause conformed to Wis. Stat. § 632.32(5)(i), it is not "crystal clear" within the context of the whole policy. *See Schmitz*, 2002 WI 98 at ¶ 46.

¶ 19. In *Schmitz*, the supreme court invalidated a reducing clause that, while complying with Wis. Stat. § 632.32(5)(i), was ambiguous when the policy was considered as a whole. *Id.* at ¶ 61. There, the court examined the entire policy, tracing the route the insured would have to take from the declarations through the UIM portion and to the endorsement containing the reducing clause. *Id.* at ¶¶ 62–66. The policy did not mention its UIM coverage in its declarations, nor did the declarations alert the insured he or she would never receive from the insurer the whole limit of the UIM coverage stated in the declarations. *Id.* at ¶ 62. In addition, the section in the policy containing the UIM limits did not inform the insured these limits would be paid by combining sources. *Id.* The only section that possibly explained the effect of the reducing clause was a statutorily required notice that informed insureds to disregard it if they had purchased UIM coverage. *Id.* at ¶¶ 66–68. The supreme court described the policy as

"organizationally complex and plainly contradictory," and held the reducing clause unenforceable. *Id.* at ¶ 72.

¶ 20. We encounter similar problems when we trace the path the insured would have to take through the policy to understand Prudential's UIM coverage. The declarations, while listing the amount of UIM coverage, do not mention that the coverage is subject to further limitations. The only arguable sign pointing to the reducing clause is the language at the bottom of the first page and the top of the second page saying the policy is made up of the declarations, forms and endorsements. Under the description of "DECLARATIONS" in the general provisions, the policy states an insured should refer to the declarations to determine the insured's level of coverage. Nothing in this description suggests the UIM coverage will be paid based on other amounts paid to the insured.

¶ 21. Further, the description of "ENDORSEMENTS" in the general provisions provides endorsements "add to, delete, or change parts of the policy." This could potentially inform the insured to read the endorsements, where he or she would eventually find the reducing clause. However, the endorsements, found in PAC 226 WI, are not labeled as endorsements, merely as "Special State Provisions." The declarations list the forms and endorsements comprising the policy, but do not say which is which. In addition, the general provisions do not define forms. A reasonable insured would not know what constitutes the policy's endorsements as compared with its forms and would be unable to determine which sections limit others.

¶ 22. Even if the insured were to determine PAC 226 WI contained the endorsements, he or she would be presented with conflicting terms of coverage. The "LIMIT OF COVERAGE" in the general provisions

states Prudential will not pay more than the limit of coverage if an insured person is injured in an insured car. In part five, however, the insurance company's liability for bodily injury to each person is limited to the amount listed under "Underinsured Motorist—Each Person" in the declarations, "less all amounts recovered for all damages." This language seems to function as a reducing clause as well, but even if we ignore it, the reducing clause found in PAC 226 WI limits Prudential's liability by amounts the insured receives from any source. The "LIMIT OF COVERAGE" in the general provisions and part five's liability limits modified by the reducing clause found in PAC 226 WI set up two conflicting levels of coverage, and the policy, by not clearly labeling what constitutes the endorsements, does not allow the insured to resolve this conflict.

¶ 23. As noted, it appears part five contains two reducing clauses, one in the limit of liability for bodily injury to each person and the other inserted from PAC 226 WI. The first clause limits Prudential's liability to the amount listed in the declarations "less all amounts recovered for all damages." This clause, like the one found in PAC 226 WI, is beyond the scope of WIS. STAT. § 632.32(5)(i), and similarly does not clearly inform an insured about the level of coverage he or she is purchasing.

¶ 24. Further, the "less all amounts recovered for all damages" language is missing from other limit of liability sections in the UIM coverage, including the UIM "each accident" limitation directly below the each person limit. Reading the "each person" and "each accident" clauses together suggests liability will be reduced only when the each person limitation applies. The reducing clause found in PAC 226 WI only compounds the confusion by limiting all UIM liability using

a differently worded clause. If we are unsure how to reconcile "less all amounts recovered for all damages" with "an amount paid by any other source," we cannot expect a reasonable insured to do it.

¶ 25. If an insured were to come to the conclusion that the part five liability limits and reducing clause serve to reduce Prudential's UIM coverage from its overall statement of coverage found in the general provisions, he or she would very likely be confused by the clause in PAC 226 WI that says the "LIMIT OF COVERAGE" in the general provisions does not apply to part four. Part four contains the policy's uninsured motorists coverage. It has a similar limit of liability section as the UIM coverage. In addition, part four and part five have identical reducing clauses. The only possible reason we can discern for excluding the general "LIMIT OF COVERAGE" from part four is to avoid confusion between the two different liability structures. The UM liability structure, however, is very similar to the UIM's. A reasonable insured would be confused about why only part four is exempted, adding to the difficulty in reconciling the general coverage with the reduced UIM liability.

¶ 26. Prudential relies primarily on our decision in *Sukala v. Heritage Mut. Ins. Co.*, 2000 WI App 266, 240 Wis. 2d 65, 622 N.W.2d 457, to support its claim its policy is unambiguous. *Sukala*, however, must be distinguished. In *Sukala*, we enforced two UIM reducing clauses. *Id.* at ¶ 13, ¶ 14. In one policy, the first paragraph of the form containing the UIM coverage told the insured that provisions within the policy restricted coverage. *Id.* at ¶ 12. Further, on the endorsement containing the reducing clause, the first line after the title said the endorsement modified the form containing the UIM coverage. *Id.* The other policy did not

originally contain UIM coverage. *Id.* at ¶ 13. Instead, all the provisions were listed within the endorsement, which stated in large capital letters: "This endorsement changes the policy. Please read it carefully. Underinsured Motorists Coverage." *Id.* Both reducing clauses mirrored WIS. STAT. § 632.32(5)(i). *Id.* at ¶ 12, ¶ 13.

¶ 27. Here, Prudential's policy does not comply with the statute, but exceeds its permissible scope. Further, the *Sukala* endorsements were clearly labeled and informed the insured of their effect. Prudential's policy does neither. PAC 226 WI is not marked specifically as an endorsement, nor does the actual document clearly state its effect. Instead, the insured would have had to refer to the definition of endorsement in the general provisions to determine the effect, which is of little help when the policy does not clearly state what constitutes the endorsements.

¶ 28. Prudential also relies on *Taylor v. Greatway Ins. Co.*, 2001 WI 93, 245 Wis. 2d 134, 628 N.W.2d 916, and *Hinrichs v. American Fam. Mut. Ins. Co.*, 2001 WI App 114, 244 Wis. 2d 191, 629 N.W.2d 44, in which the supreme court and this court, respectively, enforced UIM reducing clauses. Specifically, Prudential argues the circuit court ignored the dictates of these cases, along with *Sukala* and *Dowhower*, in reaching its decision. Prudential does not, however, make any argument why the specific decisions in *Taylor* or *Hinrichs* require us to conclude that its policy is unambiguous and we will not develop this argument for it. *See State v. Gulrud*, 140 Wis. 2d 721, 730, 412 N.W.2d 139 (Ct. App. 1987). Instead, we are satisfied our decision here follows the requirement, found in all these cases, that a UIM policy containing a reducing clause must clearly inform the insured he or she is buying a predetermined amount of insurance that will be arrived at by combin-

ing payments from the permissible other sources. Prudential's policy does not do this.

¶ 29. The policy requires the insured to leap too many hurdles in the form of assumptions and guesses. Prudential contends an insurance policy does not become ambiguous merely because the process of cross-referencing the declarations and limiting provisions may be complex. *Sukala*, 2000 WI App 266 at ¶ 14. While this is true, Prudential's policy goes well beyond cumbersome page-flipping and clause substitution. An insured would have to make guesses regarding which parts of the policy are which and reconcile conflicting clauses in order to understand that his or her UIM coverage will be determined by combining amounts received from other sources. While it is true an insured might work his or her way through the policy, after doing so the insured would still not know the extent of his or her UIM coverage. The reducing clause's effect is not crystal clear in the context of the whole policy. *See Schmitz*, 2002 WI 98 at ¶ 46. We therefore conclude the UIM language is ambiguous and we must construe the policy in favor of coverage. Because our decision resolves this matter, we do not address Hanson's cross-appeal. *See Sweet v. Berge*, 113 Wis. 2d 61, 67, 334 N.W.2d 559 (Ct. App. 1983).

*By the Court.*—Judgment affirmed.