Jeanna M. RUENGER, Plaintiff-Appellant,

v.

Seymour C. SOODSMA, Defendant,

RURAL MUTUAL INSURANCE COMPANY,
Defendant-Respondent.

Court of Appeals

*No. 04–1795. Submitted on briefs December 16, 2004.
—Decided March 31, 2005.*

2005 WI App 79

(Also reported in 695 N.W.2d 840.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Virginia M. Antoine, Habush Habush & Rottier, S.C.*, Milwaukee.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Robert G. Wixson, Winner, Wixson & Pernitz*, Madison.

Before Deininger, P.J., Dykman and Vergeront, JJ.

¶ 1. VERGERONT, J. Jeanna Ruenger appeals the circuit court order determining that the reducing clause in the underinsured motorist (UIM) endorsement of her personal auto policy was valid and also determining that there was no UIM coverage under her business auto policy for the injuries she sustained while operating her skid loader. With respect to the personal auto policy, we agree with the circuit court that the reducing clause is valid because it complies with Wis. Stat. § 632.32(5)(i)[1] and is not ambiguous when read in the context of the entire policy. With respect to the

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

---

business auto policy, we agree with Ruenger that it does provide UIM coverage for her injuries. Our primary ruling on this issue is that both the insurer's proposed construction of the introductory language in the UIM endorsement and the occupancy exclusion are prohibited by § 632.32(6)(b)2. as construed and applied in *Mau v. North Dakota Ins. Reserve Fund*, 2001 WI 134, 248 Wis. 2d 1031, 637 N.W.2d 45. Finally, we conclude the reducing clause in the UIM endorsement to the business auto policy is valid because it complies with § 632.32(5)(i) and is not ambiguous when read in the context of the entire policy.

¶ 2. We therefore affirm in part, reverse in part, and remand for further proceedings consistent with this decision and the specific instructions in paragraphs 56–57.

## BACKGROUND

¶ 3. Ruenger was operating her skid loader to clear snow from around her mailbox when an automobile driven by Seymour Soodsma struck the skid loader and caused injury to Ruenger. Soodsma was insured under a policy issued by Wisconsin American Mutual Insurance. After Ruenger initiated this action, Wisconsin American Mutual paid its policy limits—$250,000—to Ruenger.

¶ 4. Rural Mutual Insurance Company had issued two policies to Ruenger—a private passenger auto policy (personal policy) and a business automobile policy. Both policies contained UIM coverage—with a limit of $300,000 under the personal policy and $500,000 under the business policy—and the UIM endorsements[2] in both policies contained reducing clauses.

---

[2] We recognize that the business policy does not use the

234

¶ 5. Rural moved for a declaratory ruling that the UIM reducing clause in the personal policy was valid and reduced its obligation to $50,000, which it had already paid Ruenger. Ruenger responded with a motion asking the court to declare the reducing clause unenforceable because it did not comply with WIS. STAT. § 632.32(5)(i) and, alternatively, because it was ambiguous when considered in the context of the entire policy. The court disagreed with Ruenger and declared the reducing clause valid.

¶ 6. Rural subsequently moved for a declaratory ruling that Ruenger was not entitled to UIM benefits under the business policy because of the exclusion for bodily injuries sustained by the named insured when occupying an owned vehicle that is not a covered auto (occupancy exclusion). In the alternative, Rural asked the court to declare that the reducing clause was valid and therefore its obligation was $200,000—the $500,000 limit less the $250,000 Ruenger received under Soodsma's policy and the $50,000 she had received from Rural under the UIM coverage in her personal policy.

¶ 7. In response, Ruenger asked the court to declare that there was UIM coverage under the business policy and that the occupancy exclusion did not apply because it violated WIS. STAT. § 632.32(6)(b)2.a. and (5)(j). Ruenger also asked the court to declare that the reducing clause was unenforceable because it did not comply with § 632.32(5)(i) and, alternatively, because it was ambiguous in the context of the entire policy. The circuit court concluded that the occupancy exclusion was valid and, because of its application, there was no

term "UIM endorsement" but instead refers to "UIM coverage form." The label does not affect our analysis, and we use the term "endorsement" for ease of reference.

UIM coverage under the business policy. In the alternative, the court ruled that if there were UIM coverage under that policy, the UIM reducing clause would be valid.

## DISCUSSION

¶ 8. On appeal, Ruenger renews her arguments on the reducing clauses in both policies, the occupancy exclusion, and other language in the business policy. Resolution of these issues requires the construction and application of statutes and insurance policy provisions to undisputed facts, both questions of law, which we review de novo. *Van Erden v. Sobczak*, 2004 WI App 40, ¶¶ 11, 22, 271 Wis. 2d 163, 677 N.W.2d 718.

¶ 9. When we construe insurance policy provisions, our goal is to give effect to the intent of the parties as expressed in the language of the policy. *Folkman v. Quamme*, 2003 WI 116, ¶ 12, 264 Wis. 2d 617, 665 N.W.2d 857. We first inquire whether the language regarding the disputed coverage issue is ambiguous, that is, susceptible to more than one reasonable interpretation. *Id.*, ¶ 13. If there is no ambiguity, we apply the language as written, without resort to rules of construction or principles of case law. *Id.* On the other hand, if there is ambiguity, we construe the clause in favor of the insured. *Id.*

¶ 10. A provision that is unambiguous in itself may be ambiguous in the context of the entire policy. *Id.*, ¶ 19. The test for determining contextual ambiguity is the same as that for determining whether a particular clause is ambiguous: is the language of the

particular provision, "when read in the context of the policy's other language, reasonably or fairly susceptible to more than one construction . . . measured by the objective understanding of an ordinary insured." *Id.*, ¶ 29 (citations omitted). In determining whether there is contextual ambiguity, we inquire whether "the organization, labeling, explanation, inconsistency, omission, and text" of other relevant provisions in the policy create an "objectively reasonable alternative meaning and, thereby, disrupt an insurer's otherwise clear policy language." *Id.*, ¶¶ 19, 30.

I. UIM Reducing Clause in Personal Policy

A. Compliance with WIS. STAT. § 632.32(5)(i)

██

¶ 11. The reducing clause in the UIM endorsement of the personal policy provides:

**B.** The limit of liability shall be reduced by all sums:

**1.** Paid because of the "bodily injury" by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under Part **A**; and

**2.** Paid or payable because of the "bodily injury" under any of the following or similar law:

**a.** Workers' compensation law; or

**b.** Disability benefits law.

¶ 12. Under WIS. STAT. § 632.32(5)(i),

(i) A policy may provide that the limits under the policy for uninsured or underinsured motorist coverage for bodily injury or death resulting from any one accident shall be reduced by any of the following that apply:

1. Amounts paid by or on behalf of any person or organization that may be legally responsible for the bodily injury or death for which the payment is made.

2. Amounts paid or payable under any worker's compensation law.

3. Amounts paid or payable under any disability benefits laws.

¶ 13. Ruenger contends that the reducing clause in her personal policy is broader than that authorized by the statute in three ways and is thus invalid: (1) when referring to the reduction for sums paid or payable under worker's compensation law or disability benefits law, the clause contains the phrase "under any . . . similar law," which the statute does not; (2) the reduction in the reducing clause for "sums . . . [p]aid because of the 'bodily injury' by or on behalf of persons or organizations who may be legally responsible" does not expressly require that the legal responsibility be for the bodily injury, as does the statute; and (3) the second declarations page provides for reduction "as a result of your receiving amounts from other sources . . .," instead of limiting sources to the three mentioned in the statute.

¶ 14. We have specifically rejected the first argument in *Van Erden*, 271 Wis. 2d 163, and our reasoning in *Remiszewski v. American Family Ins. Co.*, 2004 WI App 175, 276 Wis. 2d 167, 687 N.W.2d 809, resolves all three arguments against Ruenger. In *Van Erden*, we concluded that the phrase "or any similar law" following the words "workers' compensation or disability benefits law" in that reducing clause was not an impermissible broadening of the statute, but was simply a "catchall phrase for jurisdictions that may call their disability benefits law by another name." 271 Wis. 2d 163,

¶¶ 24–25. We also observed that the challenged phrase did not affect the insured, because the insured had received worker's compensation benefits, not disability benefits. *Id.*, ¶ 25.

¶ 15. We reaffirmed this latter principle in *Remiszewski,* where the insured challenged the phrase "[a] payment made or amount payable" in that reducing clause because the statute permitted a reduction only for "[a]mounts paid." 276 Wis. 2d 167, ¶¶ 14, 15. The insurer had attempted to reduce the UIM limit based only on the amount actually paid and argued, citing *Folkman,* that " 'inconsistencies in the context of the policy must be material to the issue in dispute and be of such a nature that a reasonable insured would find an alternative meaning.' " *Id.*, ¶ 16 (citing *Folkman,* 264 Wis. 2d 617, ¶ 32). We agreed with the insurer:

> Here, [the insured] is challenging American Family's right to reduce her payment by the amount already paid to her from [the tortfeasor's] policy. While the "amount payable" provision would arguably permit further reductions, it would not cause a reasonable insured to believe that reductions would not be made *for actual payments made from other sources* .... The fact that an insurance policy may include arguably ambiguous language upon which the insurer has not relied is of no consequence and will not defeat the right of an insurer to reduce its limits liability under a valid provision.

*Id.*, ¶ 17 (citing *Van Erden,* 271 Wis. 2d 163, ¶ 25).

¶ 16. Ruenger argues that *Van Erden* and *Remiszewski* are not controlling because they are both inconsistent with *Hanson v. Prudential Prop. & Cas. Ins. Co.,* 2002 WI App 275, 258 Wis. 2d 709, 653 N.W.2d 915. In *Hanson,* we first concluded that the reducing clause there did not comply with Wis. Stat. § 632.32(5)(i) because, in addition to providing that the UIM limit would

be reduced by "any amounts paid by the person responsible for the accident," it provided for reduction "by an amount paid under any other source." *Id.*, ¶¶ 14, 17. We then went on to decide that, even if the clause did conform to the statute, it was ambiguous in the context of the entire policy. *Id.*, ¶ 18.

¶ 17. Ruenger asserts that *Hanson* supports her position that, if a reducing clause attempts to reduce a UIM limit by an impermissible source, the entire clause is unenforceable under any circumstances. We do not agree with Ruenger that we should follow *Hanson* rather than *Van Erden* and *Remiszewski*. First, *Hanson* did not directly address the issue whether the lack of conformity with the statute of one reducing clause provision that was not applied to the insured precluded the application to the insured of another provision in the clause that did comply with the statute. Instead, we went on to conclude that the reducing clause was ambiguous in the context of the entire policy, and we invalidated the entire clause on that basis. Second, and more importantly, as indicated in *Remiszewski, Folkman* does not permit invalidating a clause because of an inconsistency that is not material to the issue in dispute. 276 Wis. 2d 167, ¶¶ 16–17. To the extent that our decision in *Hanson* can be read to do that, we must follow *Folkman*, not *Hanson*. *See Madison Reprographics, Inc. v. Cook's Reprographics, Inc.*, 203 Wis. 2d 226, 238, 552 N.W.2d 440 (Ct. App. 1996) (when a court of appeals decision conflicts with a supreme court decision, the court of appeals must follow the supreme court decision).

¶ 18. We conclude that *Van Erden* and *Remiszewski* are controlling. Following *Van Erden*, we conclude that the addition of "or similar law" does not expand the reducing clause beyond that authorized by WIS. STAT.

§ 632.32(5)(i). Following *Van Erden* and *Remiszewski*, we conclude that the reducing clause is not invalid in its entirety simply because of language that does not track the statute, if that language is not relied on by Rural in this case. Rural seeks to reduce the UIM limit by the amount paid on behalf of Soodsma, who was legally liable for Ruenger's injuries; that is permitted by § 632.32(5)(i) and by the language of the reducing clause. Thus, even if the language in the reducing clause might arguably permit reduction by an amount paid by one legally liable for something other than the injury, as Ruenger contends, that does not make the entire clause invalid. Similarly, even if the statement in the declarations failed to specify the sources in the statute, that does not preclude Rural from reducing the limit by a source that is specified in the statute and is included in the reducing clause itself. Accordingly, we agree with the circuit court that the provisions of the reducing clause on which Rural relied did comply with § 632.32(5)(i).

B. Contextual Ambiguity

¶ 19. Ruenger contends that, even if the reducing clause itself does comply with the statute, it is ambiguous when considered in the context of the entire policy and therefore is unenforceable. We disagree.

¶ 20. We first observe, that, for the reasons we have already explained in paragraph 18, any ambiguity in the reducing clause itself is not material to the facts of this case and would not cause a reasonable insured to believe that the limits stated in the declarations would not be reduced by a payment made by or on behalf of

the tortfeasor. *See Remiszewski*, 276 Wis. 2d 167, ¶ 17. We next consider the clause in the context of other policy provisions that, according to Ruenger, render the clause ambiguous.

¶ 21. The "Personal Auto Policy Declarations" is at the beginning of the policy and consists of two pages. The declarations are generally the portion of the insurance policy to which the insured looks first. *Badger Mut. Ins. Co. v. Schmitz*, 2002 WI 98, ¶ 62, 255 Wis. 2d 61, 647 N.W.2d 223. The first page here contains information relevant to the entire policy, such as the policy period, effective date, driver information, additional insureds, and covered autos. The second page lists the limits for the various coverages provided by the policy. It clearly informs the insured that the insured is purchasing UIM coverage in a fixed amount—$300,000 each person and $300,000 each accident—and that these limits "shall be reduced as a result of your receiving amounts from other sources because of your 'bodily injury.' " There is no inconsistency between the general reference to "other sources" of reduction in the declarations and the more specific itemization of those sources in the UIM endorsement. A reasonable insured would not be confused by this but would understand that the second declarations page provides general information—that the limits stated there are subject to reduction—and the UIM endorsement provides more specific information. There is no requirement that the declarations must tell the insured that the limits are subject to reduction, *see Van Erden*, 271 Wis. 2d 163, ¶ 20, let alone tell the insured the specific sources of reduction.

¶ 22. The bottom of the first declarations page lists the numbers of all the forms and attachments, but does not further identify them. There are thirty-four

pages in the entire policy, including the declarations, and the UIM endorsement is at pages 30–33. We reject Ruenger's argument that the failure to identify the UIM endorsement by name next to its number and to specify where in the policy it can be found, together with length of the policy, create contextual ambiguity. A reasonable insured would understand that he or she had to look through the policy to find the pages that addressed each of the types of coverages listed on the second declarations page. If a reasonable insured did that, he or she would have no trouble finding the UIM endorsement, which is plainly labeled in bold print: "This Endorsement Changes The Policy. Please Read It Carefully. Underinsured Motorists Coverage—Wisconsin."

¶ 23. Ruenger argues that the interaction between the UIM endorsement and the "Split Underinsured Motorists Limits" endorsement on page 26 of the policy, four pages before the UIM endorsement, creates confusion and ambiguity. The split-limits endorsement states that "The first paragraph of the Limit of Liability provision in [the Underinsured Motorists Coverage endorsement] is replaced by the following . . ."; it then sets forth a paragraph that, in essence, provides more detail on what "maximum limit of liability for all damages resulting from any one auto accident" means in subsection A of the Limit of Liability section in the UIM endorsement. We conclude a reasonable insured would not be confused by the split-limits endorsement coming before the UIM endorsement, but would understand that the former referred to the UIM endorsement, would be able to easily find the UIM endorsement, and would know exactly where the replacement paragraph belonged in the UIM endorsement. *Gohde v. MSI Ins. Co.*, 2004 WI App 69, ¶¶ 15–16, 272 Wis. 2d

313, 679 N.W.2d 835. We also conclude a reasonable insured would understand that the reducing clause in subsection B of the Limit of Liability section of the UIM endorsement qualifies the insurer's obligation to pay the maximum limit of liability as described in the replacement subsection A. There is no ambiguity in the interaction of the replacement paragraph and the reducing clause. *Commercial Union Midwest Ins. Co. v. Vorbeck*, 2004 WI App 11, ¶¶ 39–41, 269 Wis. 2d 204, 674 N.W.2d 665; *Dowhower v. Marquez*, 2004 WI App 3, ¶ 27, 268 Wis. 2d 823, 674 N.W.2d 906; *Bellile v. American Family Mut. Ins. Co.*, 2004 WI App 72, ¶ 23, 272 Wis. 2d 324, 679 N.W.2d 827.

¶ 24. Ruenger also argues that subsection D of the Limit of Liability section in the UIM endorsement creates ambiguity when read together with the reducing clause in subsection B. Subsection D provides: "We will not make a duplicate payment under this coverage for any element of loss for which payment has been made by or on behalf of persons or organizations who may be legally responsible." According to Ruenger, a reasonable insured could understand that if the payment by or on behalf of someone legally responsible did not duplicate payments made under the UIM coverage, then there would be no reduction as a result of those payments. We disagree. In discussing an identically worded provision in another UIM endorsement, we stated: "A plain reading of subsec. D leads one to expect that a 'duplicate payment' would be one where both a tortfeasor and an insurer compensate the insured for the same element of loss. Subsection D guards against profiting beyond the damages actually incurred." *Fischer v. Midwest Sec. Ins. Co.*, 2003 WI App 246, ¶ 24, 268 Wis. 2d 519, 532, 673 N.W.2d 297. Thus, subsection D plainly serves a purpose distinct from that

of the reducing clause: it prevents a double recovery by the insured for the same loss in cases when the UIM insurer has not yet paid the limit of its UIM liability as reduced by the reducing clause. The two provisions are not inconsistent. We are satisfied that a reasonable insured would not be misled by subsection D to believe that if there is no duplication under that subsection, there is no reduction under the reducing clause.

¶ 25. We conclude the circuit court correctly decided that the reducing clause is not ambiguous when read in the context of the entire policy. Because the clause also complies with WIS. STAT. § 632.32(5)(i), it is a valid reducing clause.

II. Business Policy

A. UIM Coverage

¶ 26. The parties dispute whether there is UIM coverage for Ruenger under the business policy. Rural contends that, although Ruenger is the named insured, there is no UIM coverage because she was in a vehicle she owned that was not a covered auto when she was injured by an underinsured motor vehicle. Rural relies on: (1) the references to "covered auto" in the declarations; (2) the introductory language in the UIM endorsement and this court's construction of that language in *Crandall v. Society Ins.*, 2004 WI App 34, 269 Wis. 2d 765, 676 N.W.2d 174; and (3) the occupancy exclusion. Ruenger responds that the references in the declarations to "covered auto" are ambiguous, as is the introductory language in the UIM form, when read with the general section on coverage in the UIM endorsement. According to Ruenger, *Crandall* is not controlling and the construction of the introductory lan-

245

guage that Rural proposes, as well as the occupancy exclusion, violates WIS. STAT. § 632.32(6)(b)2.a. and (5)(j).

¶ 27. The portion of the declarations on which Rural relies states:

> **Item Two** – Schedule Of Coverages And Covered Autos: This policy provides only those coverages where a charge is shown in the premium column below. Each of these coverages will apply only to those "autos" shown as covered "autos."

There follows a column entitled "Coverages," under which "Underinsured Motorists" appears, and a column entitled "Covered Autos (Entry of one or more of the symbols from the Covered Autos Section of the Business Auto Coverage Form shows which autos are covered autos)"; in this latter column there is a "2" next to "Underinsured Motorists." Numeral "2" is described as "Owned 'Autos' Only" in the Business Auto Coverage Form. A "Schedule Of Covered Autos You Own," also part of the declarations, lists a Chevrolet pickup.

¶ 28. The introductory language in the UIM endorsement on which Rural relies provides:

> For a covered "auto" licensed or principally garaged, or "garage operations" conducted in, Wisconsin, this endorsement modifies insurance provided under the following:
>
> Business Auto Coverage Form
> Garage Coverage Form
> Motor Carrier Coverage Form
> Truckers Coverage Form

There follows this sentence: "With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless they are modified by this endorsement."

¶ 29. Section A of the UIM endorsement, entitled "Coverage," provides that Rural "will pay all sums the 'insured' is legally entitled to recover as compensatory damages from the owner or driver of an 'underinsured motor vehicle' " if the damages "result[ed] from 'bodily injury' sustained by the 'insured' caused by an 'accident' " and if "[t]he owner's or driver's liability for these damages . . . result[ed] from the ownership, maintenance or use of the 'underinsured motor vehicle.' "

¶ 30. The occupancy exclusion on which Rural relies is contained in paragraph C(3)(a) of the endorsement: "This insurance does not apply to . . . '[b]odily injury' sustained by . . . [y]ou while 'occupying' or when struck by any vehicle owned by you that is not a covered 'auto' for Underinsured Motorists Coverage under this Coverage Form."[3]

¶ 31. We agree with Ruenger that the coverage section of the UIM endorsement, when read alone, provides coverage for her injuries because they were caused by an accident and she is legally entitled to recover compensatory damages for them from the driver of an underinsured motor vehicle whose liability results from the use of the underinsured motor vehicle. We also agree with Ruenger that the declarations do not unambiguously provide that there is UIM coverage for the named insured only if that insured is occupying the covered auto. Item Two of the declarations plainly tells the insured that UIM coverage applies only to an auto

---

[3] "You" is one of the four categories of "insured" identified in section B of the UIM endorsement, but "you" is not defined in the UIM endorsement or in the definition section of the Business Auto Coverage Form. The parties, however, appear to agree that "you" means the named insured, and Ruenger is plainly identified in the declarations as the named insured.

247

that is a covered auto.[4] However, it is clear from the definition of "auto" that a skid loader is not an auto.[5] Item Two does not plainly tell a named insured that he or she does not have UIM coverage if he or she is not occupying *any* auto when injured by an underinsured motorist. Thus, when Item Two is read in conjunction with the coverage section of the UIM endorsement, a reasonable named insured could understand that he or she would have UIM coverage for injuries caused by an underinsured motor vehicle while the named insured is operating his or her skid loader.

¶ 32. Turning next to the introductory language in the UIM endorsement, we consider first Rural's argument that we construed this language in *Crandall*, 269 Wis. 2d 765, to require either that the accident involve a covered auto or that the insured be engaged in garage operations at the time of the accident. In *Crandall*, the issue was whether the UIM endorsement to a Garage Business Owner's policy provided coverage for injuries sustained by the named insured's daughter while a passenger in a car driven by her boyfriend. The parties agreed that the accident did not involve a covered auto and did not occur while anyone was engaged in garage operations, but the daughter argued

---

[4] We recognize that this provision may be subject to the same challenge Ruenger makes under *Mau v. North Dakota Ins. Reserve Fund*, 2001 WI 134, 248 Wis. 2d 1031, 637 N.W.2d 45, to Rural's construction of the introductory language in the UIM endorsement, which we discuss in paragraphs 36–39. However we address only the argument Ruenger actually makes concerning Item 2 of the declarations.

[5] An "auto" is defined in Section V of the Business Auto Coverage Form as a "land motor vehicle, trailer or semitrailer designed for travel on public roads but does not include 'mobile equipment.' "

that there was coverage because the garage operations were located in Wisconsin. *Id.*, ¶ 4. We agreed with the insurer's argument that the introductory language of that UIM endorsement required that "the accident occur while the insured is in the course of garage operations." *Id.*, ¶ 8. We reasoned that the policy was issued for the father's business, not for him as an individual, and was described in various places as a "business owner's policy" and "a garage policy." *Id.*, ¶ 9. We concluded it would be "unexpected for this kind of policy to cover Crandall and his family under circumstances wholly unrelated to Crandall's business." *Id.*, ¶ 9. At a later point in the opinion, we stated: "Here, there is no UIM coverage unless an accident involves a covered auto or the insured is engaged in garage operations at the time of the accident. Neither is the case here. There is no coverage so the UIM endorsement cannot apply." *Id.*, ¶ 13.

¶ 33. Ruenger presents two primary reasons why *Crandall* does not compel the construction of the introductory language that Rural advocates. First, Ruenger contends that the introductory language does not attempt to define or limit the circumstances under which UIM coverage will apply, but simply states that the endorsement modifies insurance provided under the four specified coverages for a covered auto licensed or principally garaged in Wisconsin and for garage operations conducted in Wisconsin. A reasonable insured, according to Ruenger, would look to the coverage section of the endorsement, not that introductory language, for an understanding of the scope of UIM coverage, and the coverage section does not mention a covered auto. Moreover, Ruenger points out, if the introductory language required occupancy of a covered auto for all UIM coverage, there would be no need for

249

the occupancy exclusion. Thus, at best, Ruenger concludes, the introductory language creates an ambiguity when read in conjunction with the coverage section of the endorsement.

¶ 34. We acknowledge that Ruenger's proposed construction of the introductory language has merit. However, it is flatly inconsistent with our construction of that same language in *Crandall,* and we may not modify, overrule, or withdraw language from our prior decision. *Cook v. Cook,* 208 Wis. 2d 166, 189, 560 N.W.2d 246 (1997). Thus we conclude, based on *Crandall,* that the introductory language limits UIM coverage to one of two situations: "an accident involves a covered auto or the insured is engaged in garage operations at the time of the accident." 269 Wis. 2d 765, ¶ 13. Ruenger's argument that this is not a reasonable construction of the introductory language or that the language is ambiguous must be directed to the supreme court.

¶ 35. However, we do agree with Ruenger's second reason why *Crandall* is not dispositive: *Crandall* did not address the issue whether the introductory language is valid if construed to preclude coverage for a named insured unless the named insured is occupying a covered auto. There was no reason to address this issue in *Crandall* because the injured party seeking UIM coverage was not the named insured. We therefore turn to the question whether Wis. Stat. § 632.32(6)(b)2. prohibits requiring that a named insured be occupying a covered auto in order to have UIM coverage.

¶ 36. Wisconsin Stat. § 632.32(6)(b)2. provides that "no policy may exclude from the coverage afforded or benefits provided: ... any person who is a named insured or passenger in or on the insured vehicle, with respect to bodily injury, sickness or disease, including

250

death resulting therefrom to that person." Relying on *Mau*, 248 Wis. 2d 1031, Ruenger argues that the introductory language as we construed it in *Crandall* violates this prohibition.

¶ 37. In *Mau*, the court addressed an issue certified by the supreme court of North Dakota: "whether . . . an underinsured motorist's policy can define a named insured by requiring occupancy of a specific vehicle." *Id.*, ¶ 12. There the driver of a rented vehicle, which had gone off the road, was injured while sitting in a police squad car that was struck by an underinsured motor vehicle. *Id.*, ¶¶ 3–5. The injured person had purchased an option from the rental agency that made UIM coverage available to him. *Id.*, ¶ 9. The policy defined an insured to require occupancy of the rented vehicle. *Id.*, ¶ 10. After deciding that the injured person was a named insured under the relevant policy, the court next considered whether it was permissible under Wis. Stat. § 632.32(6)(b)2.a. for the policy to define a named insured by requiring occupancy of a particular vehicle. At the outset, the court recognized that the occupancy requirement was not "couched as an exclusion," but the court decided to treat it as an exclusion because it had the same result as an exclusion: "exclud[ing] coverage for persons not occupying the . . . rental car." *Id.*, ¶ 33. The court then concluded that, if the occupancy requirement were applied to the named insured, it would exclude coverage for him and thus violate § 632.32(6)(b)2.a. *Id.*, ¶ 34. In reaching this conclusion, the court noted that the statutory language following "named insured"—"or passenger in or on the insured vehicle"—did not modify "named insured." *Id.*, ¶ 34 n.16. In other words, § 632.32(6)(b)2.a. prohibited excluding from coverage a named insured without regard to whether the named insured was "in or on the insured vehicle."

251

¶ 38. Rural distinguishes the occupancy requirement in *Mau* and the occupancy exclusion in the UIM endorsement here, and we discuss those arguments below. However, Rural does not explain why the occupancy requirement in *Mau* is distinguishable in any significant way from the introductory language in the UIM endorsement if that language is construed to require occupancy in a covered auto. We see no significant distinction. The introductory language here, like the occupancy requirement in *Mau*, is not phrased as an exclusion, but, just as in *Mau*, if it is construed to require occupancy in a covered auto, the result is to exclude coverage for persons not occupying that particular vehicle. And, as in *Mau*, if that construction of the introductory language is applied to Ruenger, the effect is to exclude coverage for a named insured.

¶ 39. We conclude that a construction of the introductory language requiring Ruenger to occupy a covered auto in order to have UIM coverage is prohibited by Wis. Stat. § 632.32(6)(b)2. as construed and applied in *Mau*. It follows that Rural may not rely on this language to deny Ruenger UIM coverage under the business policy.

¶ 40. Finally, we consider the exclusion for bodily injury sustained by the named insured while "occupying . . . any vehicle owned by [the named insured] that is not a covered 'auto.' " For reasons similar to those we have just discussed with respect to the introductory language, we conclude this exclusion is prohibited by Wis. Stat. § 632.32(6)(b)2. as construed and applied in *Mau*. The arguments that Rural makes to distinguish this exclusion from the occupancy requirement in *Mau* are not persuasive.

¶ 41. First, Rural argues that the occupancy exclusion does not exclude coverage for Ruenger if she is "in or on the insured vehicle," apparently viewing this phrase

in WIS. STAT. § 632.32(6)(b)2. as modifying "named insured" as well as "passenger." However, as we have noted above, the court in *Mau* specifically held that the phrase "in or on the insured vehicle" modified only "passenger," not "named insured." 248 Wis. 2d 1031, ¶ 34. Indeed, this construction of the statute was critical to the holding in *Mau*, because the occupancy requirement there did *not* exclude coverage for the named insured if he was in the rented vehicle, but, instead, specifically required that he be in the rented vehicle.

¶ 42. Second, Rural argues that, while the *Mau* occupancy provision required that the named insured occupy the insured vehicle in order to have UIM coverage, the exclusion here does not. Rather, the exclusion here applies only if the named insured is occupying a vehicle she owns that is not the insured vehicle. That is a factual distinction, but Rural does not explain its significance under the court's analysis in *Mau*. This is how the court in *Mau* analyzed the occupancy requirement in that policy in relation to WIS. STAT. § 632.32(6)(b)2:

> Section 632.32(6)(b)2.a. prohibits an exclusion for "[a]ny person who is a named insured." We have already determined that Mau is a named insured under the excess policy. The occupancy requirement, if applied to Mau will exclude coverage for Mau, a named insured. Based on our analysis, we find that the occupancy requirement violates § 632.32(6)(b)2.a., because the occupancy requirement excludes coverage for a named insured.

*Mau*, 248 Wis. 2d 1031, ¶ 34 (footnote omitted). The occupancy exclusion in Rural's policy, if applied to Ruenger, will exclude coverage for her, a named insured. Under the *Mau* court's analysis, we can see no principled distinction between this exclusion when ap-

253

plied to Ruenger and that occupancy requirement when applied to that named insured.[6]

¶ 43. In summary, we conclude: (1) the coverage section of the UIM endorsement provides coverage to Ruenger for her injuries, notwithstanding the language in the declarations on which Rural relies; (2) the construction of the introductory language proposed by Rural, when applied to Ruenger, the named insured, is prohibited by WIS. STAT. § 632.32(6)(b)2. as construed and applied in *Mau*; and (3) the occupancy exclusion, when applied to Ruenger, the named insured, is also prohibited by § 632.32(6)(b)2. as construed and applied in *Mau*. Accordingly, there is UIM coverage for Ruenger under her business policy.[7]

---

[6] Rural cites an Iowa case, *Welchans v. United Services Auto. Ass'n,* 645 N.W.2d 1 (Iowa App. 2002), which applied an identically worded exclusion and· concluded that a tractor owned by the insured was a "vehicle" but not a "covered auto." *Id.* at 3. However, while the policy language was identical, the legal issue was not: here we are concerned with whether that policy language is prohibited by a Wisconsin statute as construed by the Wisconsin supreme court.

[7] Because of this conclusion, we do not address Ruenger's arguments that Rural's proposed construction of the introductory language and the occupancy exclusion violate WIS. STAT. § 632.32(5)(j), which provides:

> (j) A policy may provide that any coverage under the policy does not apply to a loss resulting from the use of a motor vehicle that meets all of the following conditions:

> 1. Is owned by the named insured, or is owned by the named insured's spouse or a relative of the named insured if the spouse or relative resides in the same household as the named insured.

> 2. Is not described in the policy under which the claim is made.

> 3. Is not covered under the terms of the policy as a newly acquired or replacement motor vehicle.

## B. UIM Reducing Clause

### 1. *Compliance with* WIS. STAT. *§ 632.32(5)(i)*

¶ 44. The reducing clause in the UIM endorsement of Ruenger's business provides:

> D.2 The Limit of Insurance under this coverage shall be reduced by:
>
> **a.** All sums paid or payable under any workers' compensation, disability benefits or similar law, and
>
> **b.** All sums paid by or for anyone who is legally responsible, including all sums paid under this Coverage Form's Liability Coverage.

¶ 45. Ruenger argues that this clause does not comply with WIS. STAT. § 632.32(5)(i) for the same reasons she argues that the UIM reducing clause in her personal policy does not comply with that statute. The two clauses are in substance the same for purposes of addressing these arguments. For the reasons we have already discussed in paragraphs 13–18, we conclude the provisions in the business policy reducing clause on which Rural relies do comply with the statute.

### 2. *Contextual Ambiguity*

¶ 46. Ruenger also argues that the business policy reducing clause is contextually ambiguous.[8] First, she points out that the declarations state "the most [the

---

[8] For the reasons we have discussed with respect to the personal policy UIM reducing clause, *see* paragraph 20, we do not discuss Ruenger's arguments on ambiguities in the business policy UIM reducing clause itself because they are not material to the facts of this case.

insurer] will pay" for this coverage is $500,000, without any indication that this limit is subject to reduction. However, as we have already observed, there is no requirement that the declarations must tell the insured that the stated limits are subject to reduction. *Van Erden*, 271 Wis. 2d 163, ¶ 21. The bottom of the first page of the declarations, just below the list of coverages, states: "Forms and Endorsements Applying To This Coverage Form and Made Part Of This Policy At The Time Of The Issue." There follows a list of various forms and endorsements identified by number, date, and descriptive label, including "Wisconsin Underinsured Motorists Coverage." A reasonable insured would understand that it is necessary to consult this form in order to learn about UIM coverage. A reasonable insured would have no trouble in doing this, because the "Wisconsin Underinsured Motorists Coverage" endorsement is plainly labeled and contains the same number and date as indicated on the first page of the declarations.

¶ 47. We next reject Ruenger's argument that the twenty-one pages discussing other coverages in between the first page of declarations and the UIM endorsement mislead and confuse the insured about UIM coverage. The titles of the forms and endorsements in those pages correspond to the list at the bottom of the first page of declarations, and a reasonable insured would understand that he or she does not need to read through them all to understand the terms of the UIM coverage, which is plainly contained in that endorsement.

¶ 48. Ruenger advances other points of ambiguity, but we have resolved them against her in the context of the personal policy. Specifically, the reducing clause is not inconsistent with the first subsection of the "Limit

256

of Insurance," which provides (in summary) that the limit in the declarations for UIM is the maximum the insurer will pay for any one accident: a reasonable insured would understand that the reducing clause qualifies the first subsection. *See* paragraph 23. Similarly, the duplicate payment provision would not mislead a reasonable insured as to the meaning of the reducing clause. *See* paragraph 24.

¶ 49. Because we conclude the reducing clause in the UIM endorsement of the business policy is not ambiguous when read in the context of the entire policy, and because it also complies with WIS. STAT. § 632.32(5)(i), it is valid.

III. Applicable Limits of Rural's UIM Liability

¶ 50. The parties dispute the limits of Rural's UIM liability under the business policy if we conclude that there is coverage and the reducing clause is valid. This dispute also implicates the personal policy.

¶ 51. In the circuit court, Rural argued in its initial brief in support of its motion for a declaratory judgment that, if there were UIM coverage and the reducing clause were valid, the limit of its liability would be $200,000. Rural arrived at this figure by subtracting from $500,000 the tortfeasor's payment of $250,000 and its own UIM payment of $50,000 to Ruenger under her personal policy. In that brief Rural acknowledged that "[i]f the reducing clause were not given effect, the full $500,000 would be available." Ruenger responded in her brief that, according to *Janssen v. State Farm Mut. Auto. Ins. Co.*, 2002 WI App 72, 251 Wis. 2d 660, 643 N.W.2d 857, WIS. STAT. § 632.32(5)(i) does not permit an insurer to reduce the limit of its UIM liability by the amount the insured

receives from her own UM or UIM insurer. In *Janssen*, Ruenger pointed out, we held that the statutory language "any person or organization that may be legally responsible for the bodily injury or death for which the payment is made" refers to payments made by or on behalf of tortfeasors and not to payments made pursuant to the insured's own uninsured motorist coverage. *Id.*, ¶ 11. Ruenger also argued that Rural could not reduce its UIM limit of $500,000 under the business policy by the $250,000 Ruenger had received from the tortfeasor because that had already reduced Rural's limit of UIM liability under her personal policy.

¶ 52. In Rural's reply brief in the circuit court it made a new argument, which relied on the "Two or More Coverage Forms or Policies Issued by Us" contained in the Business Auto Coverage Form:

> If this Coverage Form and any other Coverage Form or policy issued to you by us or any company affiliated with us apply to the same "accident" the aggregate maximum Limit of Insurance under all the Coverage Forms or policies shall not exceed the highest applicable Limit of Insurance under any one Coverage Form or policy. This condition does not apply to any Coverage Form or policy issued by us or any affiliated company specifically to apply as excess insurance over this Coverage Form.

Rural argued that it had not known of the business policy when it paid Ruenger the $50,000 under the personal policy; had it known, it would have invoked this "other coverage" clause and would not have paid Ruenger anything under the personal policy. Under this clause, Rural asserted, only the higher UIM coverage in the business policy is available to Ruenger for this accident. According to Rural, if there were UIM coverage under the business policy and the reducing clause

258

were valid, then the reduced limit of its liability would be $250,000 (the $500,000 limit reduced by the tortfeasor's payment), but Rural would owe Ruenger no more than $200,000 because it had already paid her $50,000.

¶ 53. At the hearing in the circuit court, Rural's counsel referred briefly to the argument in its reply brief on the "other coverage" clause; in response, Ruenger's counsel pointed to Rural's statements in its first brief that were inconsistent with its later position. This point was not discussed further and the court ultimately did not have to address it because of its ruling that there was no UIM coverage under the business policy.

¶ 54. On appeal, Rural asks that, if we decide there is UIM coverage under the business policy and the reducing clause is valid, we remand to the circuit court for a determination of Rural's "potential monetary liability." Ruenger objects to a remand. She contends that Rural waived its argument on the "other coverage" clause by not making it sooner in the circuit court.

¶ 55. We do not agree with Ruenger that Rural has waived the right to raise this issue on appeal. Rural did raise it in the circuit court—in its reply brief. The circuit court did not decide it because that was unnecessary given the ruling the court did make. In any event, we have the authority to decide questions of law even if they were not raised or not decided in the circuit court. *Wirth v. Ehly*, 93 Wis. 2d 433, 443–44, 287 N.W.2d 140 (1980). We recognize, however, that Ruenger has not yet briefed the issue of the "other coverage" clause, either in the circuit court or before this court. We conclude that, rather than deciding the issue on appeal

without benefit of briefing by Ruenger, we should remand to the circuit court for a resolution of this issue.

¶ 56. On remand the court shall provide Ruenger the opportunity to respond to Rural's circuit court reply brief and shall allow such other briefing and argument as the court considers appropriate. The court shall determine, first, whether the "other coverage" clause applies. If the court determines that it does apply, then the only applicable limit of Rural's UIM liability to Ruenger for this accident is the $500,000 limit of the UIM coverage under the business policy. Consistent with our decision that the UIM reducing clause in that policy is valid, that $500,000 limit of liability is reduced by the tortfeasor's payment of $250,000. The court will then need to decide whether the reduced limit of $250,000 shall be further reduced by the $50,000 Rural has already paid Ruenger.

¶ 57. If the circuit court decides that the "other coverage" clause does *not* apply, then there are two applicable limits of UIM liability: the $300,000 in the personal policy and the $500,000 in the business policy. The court will then need to decide the issues raised by Ruenger in her responsive brief in the circuit court: whether Rural may apply the UIM reducing clause in the business policy to reduce that $500,000 limit by either: (1) the $250,000 the tortfeasor has paid Ruenger, which has already reduced the UIM limits of the personal policy, or (2) the $50,000 that Rural has already paid Ruenger under the UIM coverage of the personal policy.

*By the Court.*—Order affirmed in part; reversed in part and cause remanded with directions.